1  BINGHAM McCUTCHEN LLP
   MICHAEL I. BEGERT (SBN 141969)
2  michael.begert@bingham.com
   SUJAL J. SHAH (SBN 215230)
3  sujal.shah@bingham.com
   ERIN S. CONROY (SBN 241042)
4  erin.conroy@bingham.com
   CARLOS P. MIÑO (SBN 247022)
5  carlos.mino@bingham.com
   Three Embarcadero Center
6  San Francisco, CA  94111-4067, U.S.A.
   Telephone:  415.393.2000
7  Facsimile:  415.393.2286

8  LAWYERS' COMMITTEE FOR CIVIL RIGHTS
   OREN SELLSTROM (SBN 161074)
9  KENDRA FOX-DAVIS (SBN 248757)
   131 Steuart Street, Suite 400
10 San Francisco, CA  94105
   Telephone:  (415) 543-9697
11 Facsimile:  (415) 543-0296
   Email:  osellstrom@lccr.com

12 [Additional Counsel listed on signature pages.]

13 Attorneys for Defendant-Intervenors
   Coalition for Economic Equity and National Association
14 for the Advancement of Colored People,
   San Diego Chapter

15              UNITED STATES DISTRICT COURT

16              EASTERN DISTRICT OF CALIFORNIA

17                 SACRAMENTO DIVISION

18

| | |
|---|---|
| 19 ASSOCIATED GENERAL CONTRACTORS OF AMERICA, SAN DIEGO CHAPTER, INC., a nonprofit California corporation, | No. 2:09-cv-01622-JAM-GGH |
| 20                     Plaintiff, | **MEMORANDUM IN SUPPORT OF MOTION OF COALITION FOR ECONOMIC EQUITY AND** |
| 21       v. | **NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF** |
| 22 CALIFORNIA DEPARTMENT OF TRANSPORTATION, et al., | **COLORED PEOPLE, SAN DIEGO CHAPTER FOR LEAVE TO** |
| 23                     Defendants, | **INTERVENE UNDER FEDERAL RULE OF CIVIL PROCEDURE 24** |
| 24 COALITION FOR ECONOMIC EQUITY and | |
| 25 NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, | Date:     November 4, 2009 |
| 26 SAN DIEGO CHAPTER, | Time:     9:00 a.m. |
| | Place:    Courtroom 6 |
| 27                     Defendant-Intervenors. | Judge:    Hon. John A. Mendez |
| 28 | |

A/73128987.13/0999997-0000929484

1  **MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

2        The Coalition for Economic Equity ("CEE") and National Association for the

3  Advancement of Colored People, San Diego Chapter ("NAACP") (collectively, "Defendant-

4  Intervenors") seek to intervene as parties in Case No. 2:09-cv-01622-JAM-GGH brought by the

5  Associated General Contractors of America, San Diego Chapter, Inc. ("Plaintiff") against the

6  California Department of Transportation ("Caltrans"), its Director, Randell Iwasaki,[1] and Olivia

7  Fonseca, its Deputy Director of Civil Rights (collectively, "Defendants").  CEE's and NAACP's

8  intervention would raise no new issues.  It would not delay or complicate the case, nor otherwise

9  increase the burden on the existing parties.  The sole effect of CEE's and NAACP's intervention

10  would be to ensure that the intended beneficiaries of the government program being challenged

11  are represented before this Court.

12  **I.**      **FACTUAL BACKGROUND**

13        **A.**      **The Interests At Stake**

14        Plaintiff seeks to terminate the federally-authorized and federally-approved public

15  contracting program ("DBE program") implemented by Caltrans.  (*See* Plaintiff's Complaint

16  ("Compl."), ¶ 42, Prayer for Relief, ¶ 2.)  The contracting program includes procedures designed

17  to ensure fair participation by Disadvantaged Business Enterprises ("DBEs") in federally-funded

18  highway and transportation projects.  Defendant-Intervenors, as coalitions of minority and

19  women-owned business groups, represent the businesses that the challenged program is designed

20  to ensure have equal opportunity to compete.  (Declaration of Aileen C. Hernandez ("CEE

21  Decl."), ¶ 3; Declaration of Lei-Chala Wilson ("NAACP Decl."), ¶ 3.)  Caltrans can be expected

22  to defend its program, but it is Defendant-Intervenors whose true interests are at stake.

23        Federal law requires all recipients of federal funding to establish a DBE program

24  as a condition of receiving federal funds.  *See* Safe, Accountable, Flexible, Efficient

25  _____

26  [1] Will Kempton was previously named as the defendant in this case in his official capacity as
Director of the California Department of Transportation.  Pursuant to Federal Rule of Civil

27  Procedure 25(d), his successor, Randell Iwasaki, is automatically substituted as the named
defendant.

28

1   Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"), P.L. 109-59, § 1101(b), 119

2   Stat. 1144 (2005).  The DBE program is modest:  it does not guarantee contracts to any business,

3   nor does it provide bid discounts.  *Id.*  Rather, what it aims to do is ensure that businesses such as

4   those represented by Defendant-Intervenors are allowed equal opportunity to compete for

5   contracting opportunities.  *See., e.g.*, 49 C.F.R. § 26.1.  Thus, recipients must establish overall

6   goals for DBE participation, based on the availability of DBEs that are ready, willing, and able to

7   participate on federally-funded contracts in their jurisdiction.  In striving to meet these goals,

8   recipients may use a combination of race and gender-neutral means and race and gender-

9   conscious means, such as setting contract-specific DBE subcontracting goals for large prime

10  contracts.  *See., e.g.*, 49 C.F.R. § 26.1.  Unless they fail to administer their program in good faith,

11  federal funding recipients cannot be penalized for failing to meet the overall DBE goal.  49 CFR

12  § 26.47.  Similarly, there is no requirement that prime contractors meet contract-specific

13  subcontracting goals, so long as they demonstrate good faith efforts to do so.  49 CFR § 26.53.

14          The DBE program stems from Congress' longstanding efforts to ensure that

15  federal highway and transportation funds are not expended in a manner that reflects or reinforces

16  patterns of discrimination in that industry.  While some progress has been made over the years,

17  Congress has repeatedly found that the problem of discrimination and exclusion in federally-

18  funded contracts persists.[2]  Thus, by the late 1980s, Congressional evidence showed that equity

19  was still far off:  minority businesses only received about 2.7 percent of the prime contract

20  dollar.  H.R. Rep. No. 460, 100th Cong., 1st Sess. 18 1987.  In 1998, Congress re-enacted the

21  United States Department of Transportation's ("DOT") DBE program in the Transportation

22  Equity Act for the 21st Century ("TEA-21") as a way to continue to guard against using taxpayer

23  _____

24  [2] *See, e.g.,* Federal Contracting Opportunities for Minority and Women-Owned Businesses--An
    Examination of the 8(d) Subcontracting Program: Hearings Before the Senate Comm. on Small

25  Business, 98th Congress., 2d Sess. (1984); Disadvantaged Business Set-Asides in Transportation
    Construction Projects: Hearings Before the Subcomm. on Procurement, Innovation, and Minority

26  Enterprise Development of the House Comm. on Small Business, 100th Cong., 2nd Sess. (1988)
    Barriers to Full Minority Participation in Federally Funded Highway Construction Projects:

27  Hearings Before a Subcomm. of the House Comm. on Government Operations, 100th Cong., 2d
    Sess. (1988).

28

2

MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE
No. 2:09-cv-01622-JAM-GGH

1   funds to perpetuate a discriminatory contracting system.  *See* TEA-21, P.L. 105-178, § 1101, 112

2   Stat. 107 (1998).  As before, Congress did so only after considering substantial evidence and

3   thoroughly debating the evidence.  Congress determined that real, pervasive, and injurious racial

4   and sexual discrimination continues to exist and that the effects of that discrimination hinder the

5   ability of minority and women-owned firms to participate equally in federal contracting.  Among

6   other evidence cited by members of the House and Senate was that women own 9.2 percent of

7   the nation's construction firms, but their companies earn only about half of what is earned by

8   male-owned firms.  (S1409.)  Additionally, evidence showed that, for transportation-related

9   contracts, minority-owned firms get only 61 cents for every dollar of work that white male-

10  owned businesses receive.  *See* 64 Federal Register 21 (2 February 1999), pp. 2000 *et seq*.

11  Congress also found that goal-based programs like those in the DBE program were the only

12  effective means to combat the continuing effects of discrimination:

13          *Throughout the debate on the compelling governmental interest,*
        *the bipartisan majority of both houses of Congress repeatedly*
14      *described the necessity of the DBE program's goal-based*
        *approach to remedying the effects of discrimination in DOT-*
15      *assisted contracting.*  The most significant evidence demonstrating
        the necessity of a goal-oriented program is the evidence cited of
16      the fall-off in DBE participation in state contracting when goal-
        oriented programs end, compared to participation rates in the
17      Federal DBE program.

18  *Id.* (emphasis added).

19          Prior to 2006, Caltrans found that race and gender-conscious and race and gender-

20  neutral means were both necessary to meet its obligations under the federal DBE program.  (*See*

21  Compl., Ex. 1.)  In 2006, the Ninth Circuit's decision in *Western States Paving* required states to

22  show the effects of discrimination in the state's contracting business in order to constitutionally

23  include race and gender-conscious elements in their DBE programs.  *Western States Paving Co.,*

24  *Inc. v. Wash. State Dep't of Transp.*, 407 F.3d 983 (9th Cir. 2005).  As a result, California

25  suspended those portions of the program, and, in June 2007, Caltrans commissioned an extensive

26  "disparity study" that thoroughly documented such discrimination within California.  (BBC

27  Research & Consulting "Availability and Disparity Study" *available at*

28  http://www.dot.ca.gov/hq/bep/study/Avail_Disparity_Study_Final_Rpt..pdf (last accessed

1  August 20, 2009.)  The same year, Caltrans submitted a plan, based on the study, to the DOT that

2  would allow reinstatement of race and gender-conscious measures that would comply with

3  *Western States Paving.*  (*See* Compl., ¶ 32; Defendants' Answer ("Ans."), ¶ 32.)

4  In August 2008, the DOT approved Caltrans' request.  (*See* Compl., ¶¶ 33-34, 37;

5  Ans., ¶¶ 33-34.)  Caltrans announced in March 2009 that it was reinstating race and gender-

6  conscious contracting goals for those groups found by the disparity study to be suffering from

7  ongoing discrimination in its federally-funded contracts.  (*See* Compl., Ex. 5.)

8  This action was initiated by Plaintiff against Caltrans on June 11, 2009.  The suit

9  was filed pursuant to the Fourteenth Amendment of the U.S. Constitution; 42 USC §§ 1981,

10  1983, and 2000d; and Article I, section 31 of the California Constitution (Proposition 209).  The

11  Defendants' Answer was filed on July 7, 2009.

12  **B.     The Defendant-Intervenors**

13  CEE is an umbrella coalition that has represented diverse minority and women-

14  owned businesses for more than 27 years, seeking to ensure that such businesses are not unfairly

15  excluded from public contracting systems.  (CEE Decl., ¶ 2.)  It was first formed in 1982 in

16  response to an almost total exclusion of MBEs and WBEs from San Francisco's public

17  contracting system.  (*Id.* ¶ 3.)  For the past 27 years, the Coalition has worked to strengthen and

18  defend contracting equity programs throughout the Bay Area, as well as at the state and federal

19  levels.  (*Id.* ¶ 3.)  Members of CEE include minority contracting associations whose members

20  qualify as DBEs under the Caltrans program and federal laws, such as the African-American

21  Chamber of Commerce, Asian American Business Association, and California Hispanic

22  Contractors Association.  (*Id.* ¶ 2.)  CEE's affiliates include certified DBEs that have submitted

23  bids as contractors or subcontractors on Caltrans projects receiving federal funds, and that are

24  willing and able to submit bids for future Caltrans contracts.  (*Id.* ¶ 4.)

25  Because of this direct interest, CEE has been actively involved in pressing

26  Caltrans to ensure that its DBE program is as effective as possible.  For example, when it became

27  clear in 2006 that Caltrans was considering suspending the race-conscious elements of its DBE

28  program in response to the *Western States* case, CEE affiliates and their members pressed

4
MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE

1   Caltrans to maintain these parts of the program while a disparity study was being commissioned.

2   (*Id.* ¶ 7.)  When Caltrans declined to do so, they urged Caltrans to expeditiously complete the

3   disparity study so that the race-conscious elements of the program could be reinstated.  (*Id.* ¶ 7.)

4   Earlier this year, CEE again pressed Caltrans to reinstate the race-conscious elements of the

5   program, particularly as federal stimulus dollars were starting to flow.  (*Id.* ¶ 8, Ex. A.)

6         In addition to working administratively and legislatively to bolster the

7   effectiveness of the DBE program and other contracting equity programs, CEE has also been

8   involved in a number of court actions in support of equitable public contracting programs as

9   intervenor, as plaintiff, and as amicus curiae.  *See, e.g.*, *Associated General Contractors v.*

10  *Coalition for Economic Equity*, 950 F.2d 1401 (9th Cir. 1991); *Associated General Contractors*

11  *v. City and County of San Francisco,* 813 F.2d 922 (9th Cir. 1987); *Coral Construction, Inc. v.*

12  *City and County of San Francisco* (review granted Aug. 8, 2007, CA Supreme Court No.

13  S152934); *C&C Construction v. Sacramento Municipal Utility District*, 122 Cal. App. 4th 284

14  (2004).

15        San Diego Chapter of the NAACP is an organization that was founded in 1919 to

16  ensure the political, educational, social, and economic equality of rights of all persons and to

17  eliminate racial hatred and racial discrimination.  (NAACP Decl., ¶ 2.)  NAACP has long been

18  concerned about ongoing discrimination in local and statewide construction contracts involving

19  DOT funds.  (*Id.* ¶ 4.)  Members of NAACP include individuals and businesses who seek to do

20  business with Caltrans on federally-funded contracts and who are certified as DBEs with

21  Caltrans, and who have in the past been unable to secure contracts with public agencies.  (*Id.*

22  ¶¶ 3-6.)

23        Plaintiff asks this Court to invalidate Caltrans' 2009 DBE program as

24  unconstitutional, and seeks a preliminary and permanent injunction to stop Caltrans from

25  implementing its 2009 DBE program, or any other race or gender-conscious DBE program.

26  (Compl., ¶ 42, Prayer for Relief, ¶ 2.)  Members of CEE and NAACP are among the intended

27  beneficiaries of Caltrans' 2009 DBE program.  (CEE Decl. ¶¶ 1-4; NAACP Decl. ¶ 3.)  Because

28  Plaintiff is seeking the elimination of this level playing field, Defendant-Intervenors' members

5

1    have strong, protectable interest in a contracting system that allows fair participation.  This

2    interest is directly threatened by Plaintiff's case, and thus intervention should be granted.

3    **II.    ARGUMENT**

4        **A.    DEFENDANT-INTERVENORS ARE ENTITLED TO
             INTERVENE IN THIS ACTION AS A MATTER OF RIGHT.**

5

6            Defendant-Intervenors are entitled to intervention as a matter of right under

7    Federal Rule of Civil Procedure 24(a)(2).  Rule 24(a)(2) provides:

8            On timely motion, the court must permit anyone to intervene who:
             . . . claims an interest relating to the property or transaction that is
9            the subject of the action, and is so situated that disposing of the
             action as a practical matter impair or impede the movant's
10           ability to protect its interest, unless existing parties adequately
             represent that interest.

11

12   Fed. R. Civ. P. 24(a)(2).  The Ninth Circuit construes Rule 24 liberally in favor of movants for

13   intervention.  *See Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003) (citing *Donnelly v.

14   Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)).  "Courts are guided primarily by practical and

15   equitable considerations."  *Id.*

16           The Ninth Circuit has broken down the requirements of Rule 24(a)(2) into four

17   elements:

18           (1) the application must be timely; (2) the applicant must have a
             "significantly protectable" interest relating to the transaction that is
19           the subject of the litigation; (3) the applicant must be so situated
             that the disposition of the action may, as a practical matter, impair
20           or impede the applicant's ability to protect its interest; and (4) the
             applicant's interest must be inadequately represented by the parties
21           before the court.

22   *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (citing

23   *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996)).  For reasons set

24   forth below, Defendant-Intervenors satisfy the requirements of Federal Rule of Civil Procedure

25   24(a)(2) to intervene as a matter of right in the present action.

26           **1.    Defendant-Intervenors' Motion to Intervene is Timely.**

27           In determining whether a motion for intervention is timely, the Court generally

28   considers the following three factors:  "(1) the stage of the proceedings; (2) whether the parties

1   would be prejudiced; and (3) the reason for and any delay in moving to intervene." *Northwest*

2   *Forest Resource Council*, 82 F.3d at 836 (citing *United States v. Oregon*, 913 F.2d 576, 588 (9th

3   Cir. 1990)).

4          Defendant-Intervenors' motion is timely.  The proceeding is in its nascent stage.

5   This application is being filed within three months from the filing date of the initial complaint.

6   *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995); *Utah Ass'n of*

7   *Counties v. Clinton*, 255 F.3d 1246, 1250-51 (10th Cir. 2001).  Discovery will not close until

8   September 3, 2010 and dispositive motions are not due to be filed until October 20, 2010.  (Dkt.

9   No. 11.)  No party can claim prejudice.  Caltrans filed its answer about 60 days ago.  No

10  discovery has taken place, and the parties have yet to appear before the court.  Since the motion

11  is "filed before the district court [has] made any substantive ruling," while the proceedings are

12  still in the early stages and the court has not substantially engaged with the issues, Defendant-

13  Intervenors' motion has not prejudiced the existing parties.  *See Northwest Forest Resource*

14  *Council*, 82 F.3d at 837.

15         **2.**    **Defendant-Intervenors have a Significantly Protectable**
                       **Interest in the Subject Matter of the Action.**
16

17         Defendant-Intervenors absolutely can claim "an interest relating to the property or

18  transaction that is the subject of the action."  Fed. R. Civ. Proc. 24(a)(2).  Defendant-Intervenors

19  represent the very businesses that stand to lose equal opportunities to compete for California's

20  federally-funded public works contracts if Plaintiff's attack succeeds.  "It is generally enough

21  that the interest [asserted] is protectable under some law, and that there is a relationship between

22  the legally protected interest and the claims at issue."  *Sierra Club v. United States EPA*, 995

23  F.2d 1478, 1484 (9th Cir. 1993); *see also Donnelly*, 159 F.3d at 409; *U.S. v Alisal Water Corp.*,

24  370 F.3d 915, 919 (9th Cir. 2004).

25         Defendant-Intervenors more than satisfy this standard.  CEE and NAACP have an

26  interest in ensuring a "level playing field" for DOT-assisted contracts, and their members have

27  an interest in equitable competition for federally-funded contracts, *i.e.*, in competing on a "level

28  playing field."  These interests are protected under 49 C.F.R. Section 26, whose purpose is, *inter*

1    *alia*, "(a) [t]o ensure nondiscrimination in the award and administration of DOT-assisted

2    contracts in the Department's highway, transit, and airport financial assistance programs" and

3    "(b) [t]o create a level playing field on which DBEs can compete fairly for DOT-assisted

4    contracts." 49 C.F.R. § 26.1. CEE and NAACP are composed of the very contractors who will

5    be excluded from public contracts if that playing field tilts further.

6        The Ninth Circuit has "taken the view that a party has a sufficient interest for

7    intervention purposes if it will suffer a practical impairment of its interests as a result of the

8    pending litigation." *California ex rel. Lockyer v. U.S.*, 450 F.3d 436, 441 (9th Cir. 2006). The

9    injunction sought by Plaintiff will have "direct, immediate, and harmful effects" upon

10    Defendant-Intervenors' members' interest in equitably participating in state contracting

11    opportunities funded with federal dollars. *See Forest Conserv. Council v. U.S. Forest Service*,

12    66 F.3d 1489, 1494 (9th Cir. 1995) (noting that when "the injunctive relief sought by plaintiffs

13    will have direct, immediate, and harmful effects upon a third party's legally protectable interests,

14    that party satisfies the 'interest' test"); 42 C.F.R. § 26; CEE Decl., ¶ 5; NAACP Decl., ¶¶ 5-6.

15    The consequences of such an injunction to Defendant-Intervenors' interests is not in doubt:

16    when Caltrans abandoned race-conscious contract goals program between FY 2005-2008, DBE

17    participation on federal contracts in California dropped from 10.9 percent to 4.6 percent.

18    (Compl., Ex. 3 [Feb. 25, 2009 *Letter from U.S. DOT to Kempton*].) For 2009, it is a paltry 2.2

19    percent. That decrease has harmed Defendant-Intervenors' members. (CEE Decl., ¶ 5; NAACP

20    Decl., ¶ 4.) Accordingly, Defendant-Intervenors have a significantly protectable interest in this

21    case's subject matter.

22        **3.**      **Defendant-Intervenors' Interests Would Be**
                                  **Substantially Prejudiced By Any Judgment Or**

23                                   **Settlement Rendered in its Absence.**

24        To intervene, a movant must show the disposition of the action may "as a

25    practical matter impair or impede" the ability to protect movant's interest, unless the interest is

26    adequately represented by existing parties. Fed. R. Civ. Proc. 24(a)(2); *Cunningham v. David*

27    *Special Commitment Ctr.*, 158 F.3d 1035, 1038 (9th Cir. 1998). This only requires a showing of

28    "practical" impairment, "not whether the decision itself binds them." *Yniguez v. Arizona*, 939

1   F.2d 727, 735 (9th Cir. 1991).  The Ninth Circuit follows the "guidance of Rule 24 advisory

2   committee notes that state '[i]f an absentee would be substantially affected in a practical sense by

3   the determination made in an action, he should, as a general rule, be entitled to intervene.'"

4   *Southwest Ctr. for Biological Diversity*, 268 F.3d at 822 (citation omitted); *see also, Sierra Club*,

5   995 F.2d at 1486.

6          Defendant-Intervenors' ability to protect their interests and the interests of their

7   members will be practically impaired if they are not allowed to intervene.  An invalidation or

8   modification of Caltrans' DBE program would impair Defendant-Intervenors' members' ability

9   to obtain public highway and transportation contracts.  If Defendant-Intervenors are excluded

10  from this case, Caltrans' federally mandated and approved DBE program could be struck down.

11  Equally threatening to Defendant-Intervenors' interests, the parties could negotiate changes in

12  the program in a settlement without participation or input by those most directly impacted by any

13  changes.  This is not a case where CEE can simply file its own separate lawsuit to defend

14  Caltrans' program.  The validity of the current DBE program is under attack by Plaintiff in this

15  lawsuit, and, accordingly, the program must be defended in the instant action.

16          **4.     Defendant-Intervenors' Interests Are Not Adequately
                      Represented By The Parties.**

17

18          Intervention is appropriate where existing parties do not adequately represent the

19  Defendant-Intervenors' interests.  *Donnelly*, 159 F.3d at 409 (citation omitted).  The Ninth

20  Circuit considers three factors in determining the adequacy of representation:  "(1) whether the

21  interest of a present party is such that it will undoubtedly make all of a proposed intervenor's

22  arguments; (2) whether the present party is capable and willing to make such arguments; and (3)

23  whether a proposed intervenor would offer any necessary elements to the proceeding that other

24  parties would neglect."  *Arakaki*, 324 F.3d at 1086 (citing *California v. Tahoe Reg'l Planning

25  Agency*, 792 F.2d 775, 778 (9th Cir.1986)).  "The most important factor…is how the [movant's]

26  interest compares with the interests of existing parties."  *Id.* (citation omitted).

27          Caltrans, a public agency with a statewide constituency, cannot adequately

28  represent the interests of Defendant-Intervenors' members.  Caltrans is not a DBE.  It is not even

1    a highway contractor.  Its survival does not depend on whether highway and transportation

2    contracts are equitably awarded.  Moreover, Caltrans is accountable to the public at large, and

3    thus has competing institutional objectives (including being subject to political and funding

4    pressures).  There is no assurance, and in fact significant reason to doubt, that Caltrans will

5    present, or even be familiar with, all of the arguments that Defendant-Intervenors will assert to

6    defend the program.  Defendant-Intervenors will offer perspectives and knowledge that the

7    existing Plaintiff and Defendants are likely to lack, overlook, or undervalue.  "The court also

8    may find that a proposed intervenor's interests are not adequately represented where the

9    intervenor would bring a perspective none of the other parties to the litigation have." *Defenders*

10   *of Wildlife v. Johanns*, No. C 04-4512 PJH, 2005 WL 3260986, at *8 (N.D. Cal. Dec. 1, 2005))

11   (citation omitted); *see also, e.g., Sierra Forest Products, Inc. v. Kempthorne*, No. CV-07-00060

12   JAM, 2008 WL 2384047 (E.D. Cal. June 9, 2008); *National Ass'n of Home Builders v. San*

13   *Joaquin Valley Unified Air Pollution District*, No. CV-07-0820 LJO, 2007 WL 2757995 (E.D.

14   Cal. Sept. 21, 2007); *California ex rel. Lockyer v. U.S.*, 450 F.3d 436 (9th Cir. 2006); *Forest*

15   *Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995); *Associated*

16   *General Contractors of California v. Sec'y of Commerce of the United States Dep't of*

17   *Commerce*, 459 F.Supp. 766 (C.D. Cal. 1978), vacated 448 U.S. 908 (1980); *Georgia v. United*

18   *States Army Corps of Engineers*, 302 F.3d 1242, 1259 (11th Cir. 2002); *Sierra Club v. Espy*, 18

19   F.3d 1202, 1208 (5th Cir. 1994).

20         Plaintiff may argue that Caltrans, CEE, and NAACP have the same objective

21   since the three seek to preserve the 2009 DBE Program; however, at this stage, no one can know

22   whether Caltrans and Defendant-Intervenors have the same ultimate objective in the case.  A

23   solution that satisfies Caltrans may be wholly inadequate for Defendant-Intervenors.

24   Furthermore, the parties' interests are sufficiently divergent to show that Caltrans' representation

25   is inadequate.

26         Only a minimal showing is needed to establish that a government defendants'

27   representation "*may*" be inadequate.  *City of Los Angeles*, 288 F.3d 391, 401-402 (9th Cir. 2002)

28   (emphasis added) (holding that the district court erred in denying a Police League's intervention

1   as a matter of right where, among other things, "the record of this case and the past dealings of

2   the parties indicate a marked divergence of positions concerning key elements of the decree and

3   underlying theories of liability [at issue in the case]."). Courts have held that the broad interest a

4   government agency must represent in itself shows that representation may be inadequate where

5   the "more narrow and focused" interests of a particular industry group, such as Defendant-

6   Intervenors' public contractor members, are involved. *Natural Res. Def. Council v. Costle*, 561

7   F.2d 904, 912-13 (D.C. Cir. 1977). *See also Southwest Ctr. for Biological Diversity*, 268 F.3d at

8   823 (finding that "FWS, a federal agency, and other defendants also cannot be expected under

9   the circumstances presented to protect these private interests").

10          The Ninth Circuit has found the same type of divergence in interests sufficient to

11   meet this requirement. *See Californians for Safe & Competitive Dump Truck Transp. v.*

12   *Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998). As an agency of the state, Caltrans has

13   multiple mandates and strategic objectives that may influence its strategy in this case to

14   Defendant-Intervenors' detriment. For example, Caltrans' delivery goals are a key part of its

15   objective to "build credibility with the public." *See* Caltrans Strategic Plan 2007-2012, *available*

16   *at http://www.dot.ca.gov/perf/StrategicPlan2007-2012_with_Bookmarks.pdf* (last accessed on

17   August 20, 2009). Meeting delivery goals brings Caltrans monetary benefits that it may believe

18   could be compromised by continuing this suit. *See id.* ("Because of Caltrans' laudable success in

19   delivering projects, the Department will receive an additional $120 million in federal funding for

20   the transportation program in FY 2007/08."). Additional obligations of Caltrans, such as with

21   respect to the federal Economic Stimulus Package and disbursement of said funds, also may

22   influence its strategy where they would not impact Defendant-Intervenors' approach. In

23   contrast, Defendant-Intervenors are coalitions of the specific businesses that will lose access to

24   publicly funded contracts.

25          Were this not enough, there is ample evidence that Caltrans' interests and those of

26   the proposed intervenors are divergent, often widely so. As noted above, proposed intervenor

27   CEE has over the years often been at odds with Caltrans over its administration of the DBE

28   program. For example, CEE affiliates and their members disagreed with Caltrans' decision to

11

1  suspend the race-conscious elements of the DBE program while the disparity study was being

2  conducted.  (CEE Decl., ¶¶ 7-8.)  As CEE feared, this suspension led to substantial decreases in

3  already low rates of DBE participation on Caltrans' federally-funded contracts.  (*See* Compl.,

4  Ex. 5.)  CEE repeatedly attempted to break through the bureaucratic logjams that Caltrans

5  claimed prevented it from immediately reinstating race-conscious elements into the DBE

6  program even after the disparity study clearly showed they were warranted.  (CEE Decl., ¶ 8.)

7  For example, Caltrans communicated to the DBE community last fall that the DOT had not

8  approved a new race-conscious DBE program for California, when in fact Caltrans had received

9  approval in August 2008.  (CEE Decl., ¶ 8.)  Despite that approval, several months later federal

10  authorities chastised Caltrans because it had "not implemented [its] DBE program waiver and

11  utilized contract goals for [African American-, Asian American-, Native American-, and women-

12  owned DBE firms]."  (Declaration of Carlos P. Mino, Ex. A (*Letter from U.S. DOT to Mr. Will*

13  *Kempton, Director of Caltrans¸ December 19, 2008*) and Compl., Ex. 3 (*Letter from U.S. DOT to*

14  *Kempton*, Feb. 25, 2009).)  Until it received pressure from the DOT, CEE, and other non-

15  governmental entities, Caltrans failed to implement its new program.  (CEE Decl., Ex. C (*Letter*

16  *from Mr. Will Kempton, Director of Caltrans, to Transportation Construction Community¸*

17  March 4, 2009.)

18        Even when Caltrans decided to take such action in March 2009, CEE urged

19  Caltrans to move more quickly to reinstate the race-conscious elements so that DBEs would not

20  lose opportunities on federal stimulus projects that were already beginning to be awarded.  (CEE

21  Decl., ¶ 9, Ex. D.)  CEE also has pressed Caltrans to increase its goals and extend the DBE

22  program's reach to groups that are currently excluded.  (CEE Decl., ¶ 9, Ex. D.)  Caltrans and

23  proposed Defendant-Intervenors have divergent interests.

24        Finally, Caltrans is unlikely to fully admit its own culpability for the low DBE

25  participation numbers that necessitate the DBE program under attack.  Indeed, Caltrans' Answer

26  bears out this concern.  (*See* Ans., ¶ 39 ("admit[ting] that no Caltrans officials have engaged in

27  discrimination.").)  DBE participation on federally-funded California highway and transportation

28  contracts steadily decreased from 10.9 percent in FY 2005 to 4.6 percent in FY 2008.  (Compl.,

12

MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE
No. 2:09-cv-01622-JAM-GGH

1    Ex. 3.)  As the disparity study found, qualified DBEs are ready and available to participate in

2    much higher numbers.  (Compl., Ex. 2.)  Defendant-Intervenors believe that Caltrans itself has

3    exacerbated the problem by failing to enforce the DBE as vigorously as necessary.  (CEE

4    Decl., ¶ 9.)  This casts doubt on Caltrans' capability and willingness to "undoubtedly make" the

5    necessary arguments regarding past discrimination within California's public contracting system

6    that Defendant-Intervenors will make.  *See* Proposed Answer.  Because Caltrans is unlikely to

7    fully develop these and other arguments, it will not adequately represent Defendant-Intervenors'

8    interests.

9        **B.**　　**EVEN IF DEFENDANT-INTERVENORS HAD NO RIGHT**
     　　　　　**TO INTERVENE, THE COURT SHOULD PERMIT**
10   　　　　　**INTERVENTION.**

11       Even if the Court finds Defendant-Intervenors are not entitled to intervene as a

12   matter of right, the Court should exercise its discretion and permit intervention in this matter.

13   Under Federal Rule of Civil Procedure 24(b), a court may grant permissive intervention

14   whenever the movant "has a claim or defense that shares with the main action a common

15   question of law or fact," and when the intervention would not "unduly delay or prejudice the

16   adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b).  As explained above,

17   Defendant-Intervenors meet all of these requirements as Defendant-Intervenors seek to uphold

18   the DBE program for the very reason Plaintiff seeks to have it eliminated.  Under the

19   discretionary standard, Defendant-Intervenors' burden is far lower than that required for

20   intervention as a matter of right.  Defendant-Intervenors need not establish that they have a

21   protectable interest in the survival of the DBE program; they can simply point to the fact that

22   their defense of the DBE program and Plaintiff's attack on that program implicate the same

23   questions of law or fact.  *See Defenders of Wildlife*, 2005 WL 3260986, at *2 (citing *Kootenai*

24   *Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108-09 (9th Cir. 2002)); *see also Northwest Forest*

25   *Res. Council*, 82 F.3d at 839.  As is self-evident, the questions of law and fact are identical.

26       Permissive intervention is also justified because Defendant-Intervenors'

27   participation will facilitate an equitable result.  *See Spangler v. Pasadena Board of Education*,

28   552 F.2d 1326, 1329 (9th Cir. 1977) (the court may consider whether intervenors "will

13

MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE
No. 2:09-cv-01622-JAM-GGH

1    significantly contribute to the full development of the underlying factual issues in the suit and to

2    the just and equitable adjudication of the legal questions presented.").  Here, Caltrans does not

3    contest Defendant-Intervenors' intervention because Defendant-Intervenors can provide a crucial

4    perspective on these important issues.  The Court should grant intervention because "the

5    magnitude of this case is such that intervention will contribute to the equitable resolution of this

6    case."  *Kootenai Tribe*, 313 F.3d at 1111.  The implications of the case are significant – both in

7    terms of potential elimination of a federally-approved DBE program and in terms of the

8    important precedent the case may set on these issues.  As a result, it is essential that all

9    arguments in defense of the DBE program receive full attention.  Defendant-Intervenors' early

10   intervention would significantly contribute to the equitable resolution of these important matters.

11
12
13
> The early presence of intervenors may serve to prevent errors from
> creeping into the proceedings, clarify some issues, and perhaps
> contribute to an amicable settlement.  Postponing intervention in
> the name of efficiency until after the original parties have forged
> an agreement or have litigated some issues may, in fact, encourage
> collateral attack and foster inefficiency.

14

15   *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 974 (3d Cir. 1998); *see also Forest Conservation*

16   *Council v. United States Forest Serv.*, 66 F.3d 1489, 1496 n.8 (9th Cir. 1993) ("A liberal policy

17   in favor of intervention serves both efficient resolution of issues and broadened access to the

18   courts.") (citation omitted).

19   **III.    CONCLUSION**

20          Defendant-Intervenors have significant, legally protectable interests that relate to

21   the subject of this action.  The disposition of this action without Defendant-Intervenors'

22   involvement may, as a practical matter, impair or impede their ability to protect their interests.

23   Defendants cannot adequately represent Defendant-Intervenors' interests in this case as it has

24   been shown above that Defendants' and Defendant-Intervenors' interests diverge.  The motion is

25   timely and will not prejudice any party.  Therefore, CEE and NAACP are entitled to intervene as

26   of right under Federal Rule of Civil Procedure 24(a)(2).  Alternatively, CEE and NAACP request

27   permissive intervention.

28

MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE

1   DATED:  September 14, 2009

                                    BINGHAM McCUTCHEN LLP

2

3

4                                  By:*/s/ Michael I. Begert*

5                                  BINGHAM McCUTCHEN LLP
       MICHAEL I. BEGERT (SBN 141969)

6      michael.begert@bingham.com
   SUJAL J. SHAH (SBN 215230)

7      sujal.shah@bingham.com
   ERIN S. CONROY (SBN 241042)

8      erin.conroy@bingham.com
   CARLOS P. MIÑO (SBN 247022)

9      carlos.mino@bingham.com
   Three Embarcadero Center

10     San Francisco, CA  94111-4067, U.S.A.
   Telephone:  415.393.2000

11     Facsimile:  415.393.2286

12     LAWYERS' COMMITTEE FOR CIVIL RIGHTS
   OREN SELLSTROM (SBN 161074)

13     KENDRA FOX-DAVIS (SBN 248757)
   131 Steuart Street, Suite 400

14     San Francisco, CA  94105
   Telephone:  (415) 543-9697

15     Facsimile:  (415) 543-0296
   Email:  osellstrom@lccr.com

16     EQUAL JUSTICE SOCIETY
   EVA JEFFERSON PATERSON (SBN 67081)

17     260 California Street, Suite 700
   San Francisco, CA  94111

18     Telephone:  (415) 288-8700
   Facsimile:  (415) 288-8787

19     Email:  epaterson@equaljusticesociety.org

20     AMERICAN CIVIL LIBERTIES UNION

21     FOUNDATION OF NORTHERN CALIFORNIA
   ALAN L. SCHLOSSER (SBN 49957)

22     JORY C. STEELE (SBN 206944)
   39 Drumm Street

23     San Francisco, CA  94111
   Telephone:  (415) 621-2493

24     Facsimile:  (415) 255-8437
   Email: aschlosser@aclunc.org

25

26     Attorneys for Defendant-Intervenors
   Coalition for Economic Equity and National

27     Association for the Advancement of Colored People,
   San Diego Chapter

28

# EXHIBIT A

1  BINGHAM McCUTCHEN LLP
   MICHAEL I. BEGERT (SBN 141969)
2  michael.begert@bingham.com
   SUJAL J. SHAH (SBN 215230)
3  sujal.shah@bingham.com
   ERIN S. CONROY (SBN 241042)
4  erin.conroy@bingham.com
   CARLOS P. MINO (SBN 247022)
5  carlos.mino@bingham.com
   Three Embarcadero Center
6  San Francisco, CA  94111-4067, U.S.A.
   Telephone:  415.393.2000
7  Facsimile:  415.393.2286

8  LAWYERS' COMMITTEE FOR CIVIL RIGHTS
   OREN SELLSTROM (SBN 161074)
9  KENDRA FOX-DAVIS (SBN 248757)
   131 Steuart Street, Suite 400
10 San Francisco, CA  94105
   Telephone:  (415) 543-9697
11 Facsimile:  (415) 543-0296
   Email:  osellstrom@lccr.com

12 [*Additional Counsel listed on signature pages.*]

13 Attorneys for Defendant-Intervenors
   Coalition for Economic Equity and National Association
14 for the Advancement of Colored People,
   San Diego Chapter

15                    UNITED STATES DISTRICT COURT

16                    EASTERN DISTRICT OF CALIFORNIA

17                         SACRAMENTO DIVISION

18

19 ASSOCIATED GENERAL CONTRACTORS        No. 2:09-cv-01622-JAM-GGH
   OF AMERICA, SAN DIEGO CHAPTER, INC.,
   a nonprofit California corporation,      **DEFENDANT-INTERVENORS**
20                                          **COALITION FOR ECONOMIC**
                                            **EQUITY'S AND NATIONAL**
21            Plaintiff,                     **ASSOCIATION FOR THE**
       v.                                   **ADVANCEMENT OF COLORED**
22                                          **PEOPLE, SAN DIEGO CHAPTER'S**
   CALIFORNIA DEPARTMENT OF                 **[PROPOSED] ANSWER IN**
   TRANSPORTATION, et al.,                  **INTERVENTION**
23
            Defendants,
24                                          Judge:       Hon. John A. Mendez
   COALITION FOR ECONOMIC EQUITY and
25 NATIONAL ASSOCIATION FOR THE
   ADVANCEMENT OF COLORED PEOPLE,
26 SAN DIEGO CHAPTER,

27            Defendant-Intervenors.

28 A/73135561.5/0999997-0000929484

1    **[PROPOSED] ANSWER IN INTERVENTION**

2          Defendant-Intervenors Coalition for Economic Equity and National Association

3    for the Advancement of Colored People, San Diego Chapter (collectively, "Defendant-

4    Intervenors") hereby answer the allegations in the Complaint of Plaintiff, Associated General

5    Contractors of America, San Diego Chapter, Inc. ("Plaintiff") against the California Department

6    of Transportation, Will Kempton and Olivia Fonseca ("Defendants"), as follows:

7                          **RESPONSE TO INTRODUCTION**

8          1.     Responding to paragraph 1 of the Complaint, Defendant-Intervenors deny

9    that Plaintiff is entitled to any relief and deny that the 2009 DBE Program being implemented by

10   Defendants is unlawful or unenforceable or violates 42 U.S.C. §§ 1981, 1983, Title VI of the

11   Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d, the Fourteenth Amendment of the

12   United States Constitution or Article I, Section 31 of the California Constitution ("Prop. 209").

13   The allegations of this paragraph constitute arguments or conclusions of law which Defendant-

14   Intervenors are not required to admit or deny.  Defendant-Intervenors lack sufficient knowledge

15   to either admit or deny the remaining allegations of said paragraph and on that basis deny them.

16                     **RESPONSE TO JURISDICTION AND VENUE**

17         2.     Responding to paragraph 2, Defendant-Intervenors deny that the court has

18   jurisdiction of the state law claim under 28 U.S.C. § 1367 and otherwise admit that the court has

19   jurisdiction over the federal claims enumerated in said paragraph.  Defendant-Intervenors

20   acknowledge that Plaintiff requests a declaratory judgment, but deny that Plaintiff is entitled to

21   such relief and further deny that this Court has jurisdiction to grant such relief.

22         3.     Responding to paragraph 3, Defendant-Intervenors lack sufficient

23   information to either admit or deny allegations contained therein and on that basis deny said

24   allegations.

25                          **RESPONSE TO PARTIES**

26         4.     Responding to paragraph 4, the allegations of this paragraph constitute

27   arguments or conclusions of law which Defendant-Intervenors are not required to admit or deny.

28   Defendant-Intervenors lack sufficient knowledge to either admit or deny the allegations and on

1    that basis deny said allegations.

2          5.          Responding to paragraph 5, the allegations of this paragraph constitute

3    conclusions of law which Defendant-Intervenors are not required to admit or deny.  Defendant-

4    Intervenors admit that Defendants have a duty to comply with state and federal law.  Defendant-

5    Intervenors otherwise lack sufficient knowledge to admit or deny the allegations and on that

6    basis deny them.

7          6.          Responding to paragraph 6, the allegations of this paragraph constitute

8    conclusions of law which Defendant-Intervenors are not required to admit or deny.  Defendant-

9    Intervenors deny the allegations of this paragraph.

10          7.          Responding to paragraph 7, the allegations of this paragraph constitute

11    conclusions of law which Defendant-Intervenors are not required to admit or deny.  Defendant-

12    Intervenors admit Olivia Fonseca is Deputy Director of Civil Rights for Caltrans and otherwise

13    deny the remaining allegations of this paragraph.

14                    **RESPONSE TO ALLEGATIONS: SAFETEA-LU**

15          8.          Responding to paragraph 8, Defendant-Intervenors admit President Bush

16    signed "SAFETEA-LU" and otherwise deny the allegations contained therein.

17          9.          Responding to paragraph 9, Defendant-Intervenors lack sufficient

18    information to either admit or deny said allegations and on that basis deny said allegations.

19          10.          Responding to paragraph 10, Defendant-Intervenors admit that Pub. L.

20    109-59, title 1, § 1101(b) of SAFETEA-LU is entitled "Disadvantaged Business Enterprises" and

21    otherwise deny the remaining allegations contained therein.

22          11.          Responding to paragraph 11, Defendant-Intervenors admit to the language

23    of the quoted statutes and regulations as set forth in those statutes and regulations and otherwise

24    deny the allegations contained therein.

25          12.          Responding to paragraph 12, Defendant-Intervenors admit to the language

26    of the quoted statutes and regulations as set forth in Section 1101(b)(2) of SAFETEA-LU.

27          13.          Responding to paragraph 13, Defendant-Intervenors deny the allegations

28    contained therein.

1          14.     Responding to paragraph 14, the allegations of this paragraph constitute

2  arguments or conclusions of law which Defendant-Intervenors are not required to admit or deny.

3  Defendant-Intervenors deny the allegations of said paragraph.

4         **RESPONSE TO TITLE 49 CODE OF FEDERAL REGULATIONS PART 26**

5          15.     Responding to paragraph 15, Defendant-Intervenors admit that federal

6  regulations governing disadvantaged business enterprise programs are found at 49 CFR Part 26

7  and otherwise deny the allegations contained therein.

8          16.     Responding to paragraph 16, the allegations of this paragraph constitute

9  arguments or conclusions of law which Defendant-Intervenors are not required to admit or deny.

10  Defendant-Intervenors admit that the referenced regulations contain the language set forth in the

11  regulations and otherwise deny the allegations contained in said paragraph.

12         17.     Responding to paragraph 17, the allegations of this paragraph constitute

13  arguments or conclusions of law which Defendant-Intervenors are not required to admit or deny.

14  Defendant-Intervenors admit the referenced regulations contain the language set forth in the

15  regulations and otherwise deny the allegations contained in said paragraph.

16         18.     Responding to paragraph 18, the allegations of this paragraph constitute

17  arguments or conclusions of law which Defendant-Intervenors are not required to admit or deny.

18  Defendant-Intervenors admit the referenced regulations contain the language set forth in the

19  regulations and otherwise deny the allegations contained in said paragraph.

20         19.     Responding to paragraph 19, the allegations of this paragraph constitute

21  arguments or conclusions of law which Defendant-Intervenors are not required to admit or deny.

22  Defendant-Intervenors admit the referenced regulations contain the language set forth in the

23  regulations and otherwise deny the allegations contained in said paragraph.

24         20.     Responding to paragraph 20, the allegations of this paragraph constitute

25  arguments or conclusions of law which Defendant-Intervenors are not required to admit or deny.

26  Defendant-Intervenors admit the referenced regulations contain the language set forth in the

27  regulations and otherwise deny the allegations contained in said paragraph.

28         21.     Responding to paragraph 21, the allegations of this paragraph constitute

3
DEFENDANT-INTERVENORS'[PROPOSED] ANSWER IN INTERVENTION
No. 2:09-cv-01622-JAM-GGH

1    arguments or conclusions of law which Defendant-Intervenors are not required to admit or deny.

2    Defendant-Intervenors admit the referenced regulations contain the language set forth in the

3    regulations and otherwise deny the allegations contained in said paragraph.

4            22.    Responding to paragraph 22, the allegations of this paragraph constitute

5    arguments or conclusions of law which Defendant-Intervenors are not required to admit or deny.

6    Defendant-Intervenors admit the referenced Appendix A to 49 CFR Part 26 contains the

7    language set forth in Appendix A to 49 CFR Part 26 and deny the remaining allegations of said

8    paragraph.

9            23.    Responding to paragraph 23, the allegations of this paragraph constitute

10    arguments or conclusions of law which Defendant-Intervenors are not required to admit or deny.

11    Defendant-Intervenors deny the allegations of said paragraph.

12    **RESPONSE TO ARTICLE I, SECTION 31, OF THE CALIFORNIA CONSITUTION**

13            24.    Responding to paragraph 24, Defendant-Intervenors admit the people of

14    California amended the Constitution by adopting Proposition 209 and admit the California

15    Constitution contains the language set forth in Art. I, § 31(a), but deny it is "the relevant

16    provision" of Proposition 209.

17            25.    Responding to paragraph 25, the allegations of this paragraph constitute

18    arguments or conclusions of law which Defendant-Intervenors are not required to admit or deny.

19    Defendant-Intervenors admit the California Constitution contains the language set forth in Art. I,

20    § 31(f) and deny the remaining allegations contained therein.

21            26.    Responding to paragraph 26, the allegations of this paragraph constitute

22    arguments or conclusions of law which Defendant-Intervenors are not required to admit or deny.

23    Defendant-Intervenors deny the allegations contained therein.

24            27.    Responding to paragraph 27, the allegations of this paragraph constitute

25    arguments or conclusions of law which Defendant-Intervenors are not required to admit or deny.

26    Defendant-Intervenors deny the allegations contained therein.

27            28.    Responding to paragraph 28, the allegations of this paragraph constitute

28    arguments or conclusions of law which Defendant-Intervenors are not required to admit or deny.

4

1    Defendant-Intervenors admit the California Constitution contains the language set forth in Art. I,

2    § 31(e) and otherwise deny the remaining allegations of said paragraph.

3        29.    Responding to paragraph 29, Defendant-Intervenors deny the allegations

4    contained therein.

5    **RESPONSE TO ALLEGATIONS OF CALTRANS' DISCRIMINATORY 2009 DBE**

6    **GOALS AND METHODOLOGY**

7        30.    Responding to paragraph 30, Defendant-Intervenors deny that Defendants

8    were not in danger of losing federal funding and otherwise lack sufficient knowledge to admit or

9    deny the allegations of said paragraph, and on that basis deny them.

10       31.    Responding to paragraph 31, Defendant-Intervenors admit that Defendants

11   conducted a disparity study and that Defendants have allowed public access to that study.

12   Defendant-Intervenors otherwise lack sufficient information to either admit or deny allegations

13   contained therein and on that basis deny the allegations contained therein.

14       32.    Responding to paragraph 32, Defendant-Intervenors lack sufficient

15   information to either admit or deny allegations contained therein and on that basis deny said

16   allegations.

17       33.    Responding to paragraph 33, Defendant-Intervenors lack sufficient

18   information to either admit or deny allegations contained therein and on that basis deny said

19   allegations.

20       34.    Responding to paragraph 34, Defendant-Intervenors lack sufficient

21   information to either admit or deny allegations contained therein and on that basis deny said

22   allegations.

23       35.    Responding to paragraph 35, Defendant-Intervenors admit that the Overall

24   2009 G&M includes the language quoted in this paragraph and otherwise deny the allegations

25   contained therein.

26       36.    Responding to paragraph 36, the Overall 2009 G&M speaks for itself, and

27   Defendant-Intervenors deny Plaintiff's characterization of it.  Defendant-Intervenors otherwise

28   lack sufficient information to either admit or deny the remaining allegations contained therein

1    and on that basis deny them.

2          37.    Responding to paragraph 37, Defendant-Intervenors lack sufficient

3    knowledge to either admit or deny the allegations contained therein, and on that basis deny them.

4          38.    Responding to paragraph 38, Defendant-Intervenors admit that the

5    referenced documents contain the language set forth in the referenced documents and otherwise

6    lack sufficient knowledge to either admit or deny the allegations contained therein, and on that

7    basis deny them.

8          39.    Responding to paragraph 39, Defendant-Intervenors deny the allegations

9    contained therein.

10          40.    Responding to paragraph 40, Defendant-Intervenors lack sufficient

11   information to either admit or deny the remaining allegations contained therein and on that basis

12   deny them.

13                **RESPONSE TO INJUNCTIVE RELIEF ALLEGATIONS**

14          41.    Responding to paragraph 41, Defendant-Intervenors incorporate by

15   reference their responses to each of the incorporated allegations as set forth above.

16          42.    Responding to paragraph 42, Defendant-Intervenors admit that the 2009

17   DBE Report contains the language set forth in the 2009 DBE Report and otherwise deny the

18   remaining allegations of this paragraph.

19          43.    Responding to paragraph 43, Defendant-Intervenors deny the allegations

20   of said paragraph.

21          44.    Responding to paragraph 44, Defendant-Intervenors deny the allegations

22   of said paragraph.

23          45.    Responding to paragraph 45, Defendant-Intervenors deny the allegations

24   of said paragraph.

25          46.    Responding to paragraph 46, Defendant-Intervenors deny the allegations

26   of said paragraph.

27                **RESPONSE TO DECLARATORY RELIEF ALLEGATIONS**

28          47.    Responding to paragraph 47, Defendant-Intervenors incorporate by

1  reference its responses to each of the incorporated allegations as set forth above.

2     48.  Responding to paragraph 48, Defendant-Intervenors admit that Defendants

3  "dispute that its race-conscious requirements are unconstitutional" and otherwise deny the

4  remaining allegations of this paragraph.

5     49.  Responding to paragraph 49, Defendant-Intervenors deny the allegations

6  of said paragraph.

7          **RESPONSE TO FIRST CLAIM FOR RELIEF**

8     50.  Responding to paragraph 50, Defendant-Intervenors incorporate by

9  reference their responses to each of the incorporated allegations as set forth above.

10     51.  Responding to paragraph 51, Defendant-Intervenors admit that the U.S.

11  Constitution contains the language set forth in the Fourteenth Amendment (U.S. Const. amend.

12  XIV, section 1).  The remaining allegations of this paragraph constitute arguments or

13  conclusions of law which Defendant-Intervenors are not required to admit or deny.

14     52.  Responding to paragraph 52, Defendant-Intervenors lack sufficient

15  information to either admit or deny allegations contained therein and on that basis deny them.

16     53.  Responding to paragraph 53, the allegations of this paragraph constitute

17  arguments or conclusions of law which Defendant-Intervenors are not required to admit or deny.

18  Defendant-Intervenors deny the allegations contained therein.

19     54.  Responding to paragraph 54, Defendant-Intervenors deny the allegations

20  contained therein.

21         **RESPONSE TO SECOND CLAIM FOR RELIEF**

22     55.  Responding to paragraph 55, Defendant-Intervenors incorporate by

23  reference their responses to each of the incorporated allegations as set forth above.

24     56.  Responding to paragraph 56, Defendant-Intervenors deny the allegations

25  contained therein.

26     57.  Responding to paragraph 57, Defendant-Intervenors admit that Defendants

27  have set "a participation goal of 13.5%, of which 6.75% is to be achieved through race-conscious

28  measures" but deny the remaining allegations of said paragraph.

1          58.    Responding to paragraph 58, Defendant-Intervenors lack sufficient

2  knowledge to admit or deny the allegations regarding Plaintiff's desires, and on that basis deny

3  them.  Defendant-Intervenors deny the remaining allegations of said paragraph.

4                   **RESPONSE TO THIRD CLAIM FOR RELIEF**

5          59.    Responding to paragraph 59, Defendant-Intervenors incorporate by

6  reference their responses to each of the incorporated allegations as set forth above.

7          60.    Responding to paragraph 60, Defendant-Intervenors deny the allegations

8  contained therein.

9          61.    Responding to paragraph 61, Defendant-Intervenors deny the allegations

10  contained therein.

11          62.    Responding to paragraph 62, Defendant-Intervenors lack sufficient

12  information to either admit or deny the allegations contained therein and on that basis deny them.

13          63.    Responding to paragraph 63, Defendant-Intervenors deny the allegations

14  contained therein.

15                 **RESPONSE TO FOURTH CLAIM FOR RELIEF**

16          64.    Responding to paragraph 64, Defendant-Intervenors incorporate by

17  reference their responses to each of the incorporated allegations as set forth above.

18          65.    Responding to paragraph 65, Defendant-Intervenors deny the allegations

19  contained therein.

20          66.    Responding to paragraph 66, Defendant-Intervenors admit the language of

21  42 U.S.C. § 2000d as set forth in the referenced statute and otherwise deny the allegations of this

22  paragraph.

23          67.    Responding to paragraph 67, Defendant-Intervenors deny the allegations

24  of this paragraph.

25          68.    Responding to paragraph 68, Defendant-Intervenors admit that Defendants

26  award federally funded contracts.  Defendant-Intervenors otherwise deny the allegations

27  contained therein.

28

1                      **RESPONSE TO FIFTH CLAIM FOR RELIEF**

2              69.     Responding to paragraph 69, Defendant-Intervenors incorporate by

3 reference their responses to each of the incorporated allegations as set forth above.

4              70.     Responding to paragraph 70, the allegations of this paragraph constitute

5 arguments or conclusions of law which Defendant-Intervenors are not required to admit or deny.

6 Defendant-Intervenors admit that the California Constitution contains the language set forth at

7 Article 1, section 31, but deny Plaintiff's characterization of that language.

8              71.     Responding to paragraph 71, Defendant-Intervenors deny the allegations

9 contained therein.

10            72.     Responding to paragraph 72, the allegations of this paragraph constitute

11 arguments or conclusions of law which Defendant-Intervenors are not required to admit or deny.

12 Defendant-Intervenors admit that the California Constitution contains the language set forth at

13 Article 1, section 31(e), but deny Plaintiff's characterization of that language.  Defendant-

14 Intervenors deny the remaining allegations.

15                             **AFFIRMATIVE DEFENSES**

16                         **FIRST AFFIRMATIVE DEFENSE**

17           Plaintiff's state law claims against Defendants' 2009 DBE Program are barred by

18 the 11th Amendment to the United States Constitution.

19                       **SECOND AFFIRMATIVE DEFENSE**

20           Plaintiff's claims are barred because Defendants are immune to Plaintiff's claims.

21                      **THIRD AFFIRMATIVE DEFENSE**

22           Plaintiff's claims are barred because it has failed to join indispensable parties

23 without whom the case cannot proceed.

24                      **FOURTH AFFIRMATIVE DEFENSE**

25           Plaintiff's claims are barred because it has failed to join necessary parties without

26 whom the case should not proceed.

27                      **FIFTH AFFIRMATIVE DEFENSE**

28           Plaintiff's claims are barred because it lacks standing to pursue the claims

1  asserted herein.

2  ### SIXTH AFFIRMATIVE DEFENSE

3  Plaintiff's claims are barred because Defendants are required by law to implement

4  a Disadvantaged Business Program in accord with the requirements of 49 Code of Federal

5  Regulations, Part 26.

6  ### SEVENTH AFFIRMATIVE DEFENSE

7  Plaintiff's claims are barred because Defendants are implementing the challenged

8  program in order to establish and maintain eligibility for federal funds.

9  ### EIGHTH AFFIRMATIVE DEFENSE

10  Plaintiff's claims are barred because the U.S. Constitution requires Defendants to

11  implement the challenged program.

12  ### NINTH AFFIRMATIVE DEFENSE

13  Plaintiff's claims are barred because the Federal Highway Administration has

14  made it a condition of receipt of federal funds that Defendants implement the challenged

15  Disadvantaged Business Program as approved by them and in accord with the requirements of 49

16  Code of Federal Regulations, Part 26.

17  ### TENTH AFFIRMATIVE DEFENSE

18  Plaintiff is not a "person" who may assert the claims stated herein.

19  ### ELEVENTH AFFIRMATIVE DEFENSE

20  Plaintiff has failed to state a claim upon which relief can be granted.

21  ### TWELFTH AFFIRMATIVE DEFENSE

22  Plaintiff's claims are barred because the relief requested would require

23  Defendants to violate the Fourteenth Amendment to the U.S. Constitution (U.S. Const. amend.

24  XIV, section 1).

25  ### THIRTEENTH AFFIRMATIVE DEFENSE

26  Plaintiff's claims are barred because the relief requested would require

27  Defendants to violate 42 U.S.C. § 1981.

28

1                      **FOURTEENTH AFFIRMATIVE DEFENSE**

2                 Plaintiff's claims are barred because the relief requested would require

3 Defendants to violate 42 U.S.C. § 1983.

4                      **FIFTEENTH AFFIRMATIVE DEFENSE**

5                 Plaintiff's claims are barred because the relief requested would require

6 Defendants to violate 42 U.S.C. § 2000d.

7                           **PRAYER**

8                 WHEREFORE, these Defendant-Intervenors pray judgment against the Plaintiff

9 as follows:

10                 1.      That this court dismiss Plaintiff's Complaint with prejudice and enter

11 judgment in favor of Defendants and Defendant-Intervenors and deny Plaintiff's entire prayer for

12 relief.

13                 2.      That this court declare that the race-conscious remedial measures in

14 Defendants' 2009 DBE Program Goal and Methodology ("2009 Goal and Methodology") are

15 constitutional, valid and enforceable and further that said 2009 Goal and Methodology does not

16 violate the Fourteenth Amendment of the United States Constitution, 42 U.S.C. §§ 1981, 1983,

17 2000d or Article I, section 31, of the California Constitution.

18                 3.      That this court declare that, under the facts presented, the race-conscious

19 remedial measures in Defendants' 2009 DBE Program are required by the Fourteenth

20 Amendment of the United States Constitution as well as 42 U.S.C. §§ 1981, 1983, and/or 2000d.

21                 4.      That this court declare Defendants are required by law to comply with

22 regulations set forth in 49 CFR Part 26.

23                 5.      That no injunction issue to enjoin the Defendants from implementing the

24 2009 DBE Program, including its Goal and Methodology.

25                 6.      For legal costs, expenses and attorneys' fees.

26                 7.      For such other relief as the Court deems just and proper.

27

28

1   DATED:  September 14, 2009

                                       BINGHAM McCUTCHEN LLP
2

3

4                                      By:/s/ Michael I. Begert

5                                      BINGHAM McCUTCHEN LLP
                                       MICHAEL I. BEGERT (SBN 141969)
6                                      michael.begert@bingham.com
                                       SUJAL J. SHAH (SBN 215230)
7                                      sujal.shah@bingham.com
                                       ERIN S. CONROY (SBN 241042)
8                                      erin.conroy@bingham.com
                                       CARLOS P. MINO (SBN 247022)
9                                      carlos.mino@bingham.com
                                       Three Embarcadero Center
10                                     San Francisco, CA  94111-4067, U.S.A.
                                       Telephone:  415.393.2000
11                                     Facsimile:  415.393.2286

12                                     LAWYERS' COMMITTEE FOR CIVIL RIGHTS
                                       OREN SELLSTROM (SBN 161074)
13                                     KENDRA FOX-DAVIS (SBN 248757)
                                       131 Steuart Street, Suite 400
14                                     San Francisco, CA  94105
                                       Telephone:  (415) 543-9697
15                                     Facsimile:  (415) 543-0296
                                       Email:  osellstrom@lccr.com
16
                                       EQUAL JUSTICE SOCIETY
17                                     EVA JEFFERSON PATERSON (SBN 67081)
                                       260 California Street, Suite 700
18                                     San Francisco, CA  94111
                                       Telephone:  (415) 288-8700
19                                     Facsimile:  (415) 288-8787
                                       Email:  epaterson@equaljusticesociety.org
20
                                       AMERICAN CIVIL LIBERTIES UNION
21                                     FOUNDATION OF NORTHERN CALIFORNIA
                                       ALAN L. SCHLOSSER (SBN 49957)
22                                     JORY C. STEELE (SBN 206944)
                                       39 Drumm Street
23                                     San Francisco, CA  94111
                                       Telephone:  (415) 621-2493
24                                     Facsimile:  (415) 255-8437
                                       Email: aschlosser@aclunc.org
25
                                       Attorneys for Defendant-Intervenors
26                                     Coalition for Economic Equity and National
                                       Association for the Advancement of Colored People,
27                                     San Diego Chapter

28