SHARON L. BROWNE, No. 119246
E-mail: slb@pacificlegal.org
RALPH W. KASARDA, No 205286
E-mail: rwk@pacificlegal.org
ANTONIO J. SENAGORE, No. 258853
E-mail: as@pacificlegal.org
Pacific Legal Foundation
3900 Lennane Drive, Suite 200
Sacramento, California 95834
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

Attorneys for Plaintiff
Associated General Contractors
of America, San Diego Chapter, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASSOCIATED GENERAL CONTRACTORS OF AMERICA, SAN DIEGO CHAPTER, INC., a nonprofit California corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA DEPARTMENT OF TRANSPORTATION; WILL KEMPTON, individually, and in his official capacity as Director of the California Department of Transportation; and OLIVIA FONSECA, individually, and in her official capacity as Deputy Director of the California Department of Transportation,<br><br>　　　　　Defendants. | No. 2:09-CV-01622-JAM-GGH<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTIONS TO INTERVENE** |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................... ii

INTRODUCTION ............................................................ 1

ARGUMENT ................................................................ 3

  I.  MOVANTS ARE NOT ENTITLED TO
     INTERVENTION AS A MATTER OF RIGHT .............................. 3

     A.  Movants' Interests Are Adequately Represented, Because Their
        Legal Objective in This Litigation Is the Same as That of Caltrans .............. 4

     B.  Movants Cannot Overcome the Presumption of Adequate Representation ....... 8

  II.  MOVANTS ARE NOT ENTITLED
      TO PERMISSIVE INTERVENTION ..................................... 11

CONCLUSION ............................................................. 13

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

# TABLE OF AUTHORITIES

**Page**

**Cases**

*American Nat'l Bank & Trust Co. v. City of Chicago*, 865 F.2d 144 (7th Cir. 1989) . . . . . . . . 3

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Blake v. Pallan*, 554 F.2d 947 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Bush v. Viterna*, 740 F.2d 350 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*California ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006) . . . . . . . . . . . . . . 3, 8

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*,
    152 F.3d 1184 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

*Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . 11

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Forest Conservation Council v. United States Forest Serv.*,
    66 F.3d 1489 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

*Hopwood v. Texas*, 21 F.3d 603 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*Ingebretsen on Behalf of Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274
    (5th Cir. 1996), *reh'g & reh'g en banc denied, cert. denied*, 519 U.S. 965 (1996) . . . . . . 12

*League of United Latin American Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997) . . . . . . . 3

*Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49 (1st Cir. 1979) . . . . . . . . . . . . . 4

*Nw. Forest Res. Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 3

*Oregon Envtl. Council v. Oregon Dep't of Envtl. Quality*,
    775 F. Supp. 353 (D. Ore. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People of California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775 (9th Cir. 1986) . . . . . . 12

*Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Sierra Club v. United States EPA*, 995 F.2d 1478 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . 7

*Spangler v. Pasadena Bd. of Educ.*, 552 F.2d 1326 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . 12

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) . . . . . . . . . . . . . . . . 7-8, 10

*Venegas v. Skaggs*, 867 F.2d 527 (9th Cir. 1989), *aff'd*, 495 U.S. 82 (1990) . . . . . . . . . . 11-12

**United States Constitution**

U.S. Const. amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

| | **Page** |
|---|---|
| **California Constitution** | |
| Cal. Const. art. I, § 31 | 1 |
| **Federal Statutes** | |
| 42 U.S.C. § 1981 | 1 |
| § 1983 | 1 |
| § 2000d | 1 |
| **Federal Regulation** | |
| 49 C.F.R. Part 26 | 5 |
| 49 C.F.R. § 26.1(b) | 7 |
| **Rules of Court** | |
| Fed. R. Civ. P. 24(a) | 1, 3 |
| 24(b) | 1, 12 |
| 24(b)(2) | 11 |
| **Miscellaneous** | |
| BBC Research & Consulting, *Availability and Disparity Study*, Appendix I (2007), *available at* http://www.dot.ca.gov/hq/bep/study/Appendix%20I.pdf (last visited Oct. 13, 2009) | 9 |
| California Department of Transportation website, Biographies, Olivia Fonseca, *available at* http://www.dot.ca.gov/hq/paffairs/bios/fonseca.htm (last visited Oct. 13, 2009). | 11 |
| California Department of Transportation website, Business tab, Civil Rights, *available at* http://www.dot.ca.gov/hq/bep/index.htm (last visited Oct. 13, 2009). | 11 |

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

The Coalition for Economic Equity and National Association for the Advancement of Colored People, San Diego Chapter (collectively, Movants), filed a motion to intervene in this matter on September 14, 2009. Movants seek to intervene under Federal Rule of Civil Procedure 24(a) as of right and, in the alternative, seek permissive intervention under Federal Rule of Civil Procedure 24(b). For the reasons outlined below, Movants' motion to intervene should be denied.

**INTRODUCTION**

During March, 2009, the California Department of Transportation (Caltrans) implemented a public contracting program containing discriminatory race-conscious goals. The Caltrans Disadvantaged Business Enterprise (DBE) Goal and Methodology for Federal Fiscal Year 2009 (DBE Program) requires that 6.75% of contracts on federally funded transportation projects be awarded on the basis of race- and sex-based preferences. Specifically, prime contractors must either hire an African American, Native American, Asian Pacific, or women-owned firm, or demonstrate "good faith efforts" to obtain the required DBE participation. Not all groups are entitled to this race- and sex-based preference. Male-owned nonminority, Hispanic American, and Subcontinent Asian American businesses are denied the full benefits of this program.

Plaintiff Associated General Contractors of America, San Diego Chapter, Inc. (Plaintiff), brought this challenge seeking declaratory and injunctive relief against Caltrans, Will Kempton, individually, and in his official capacity as Director of Caltrans, Olivia Fonseca, individually, and in her official capacity as Deputy Director of Civil Rights for Caltrans (collectively Caltrans or Defendants), on the grounds that the DBE program's discriminatory provisions violate the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §§ 1981, 1983, Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d, and Article I, section 31, of the California Constitution.

Intervention by Movants in this case is not justified. Movants claim their interests are different from Caltrans' interests in this matter, but that is demonstrably wrong. Caltrans and Movants seek the same ultimate objective here—the continued implementation of Caltrans' DBE

///

Program. Movants have not articulated a different objective, and their proposed Answer and prayer for relief are, for all practical purposes, identical to those of Caltrans.

While Movants have in the past called for an expansion of the discriminatory provisions of Caltrans' DBE Program, Movants make clear that is not their objective in this litigation. Such an objective in this case would require Movants to attack the DBE Program and its only evidentiary basis—a disparity study from 2007. But such an attack would highlight the foundational and constitutional problems of Caltrans' discriminatory program, and substantially increase the likelihood of Plaintiff's success. That is an outcome Movants do not favor. For that reason, Movants' interests in this litigation do not diverge from the interests of Caltrans. Both seek the continued implementation of the discriminatory race-conscious measures, and both seek to defend the DBE Program in its *current form*.

As Movants acknowledge, Caltrans has invested considerable effort in an attempt to justify the race- and sex-based measures in its DBE Program. This is evidenced by the funding by Caltrans of a state-wide disparity study and its sponsorship of numerous public meetings to gather anecdotal evidence from individual DBEs and minority trade associations representing hundreds of DBEs. Caltrans' DBE Program is based solely on its disparity study, and Movants offer no new evidence that Caltrans has not already gathered. Furthermore, Caltrans has shown that it is dedicated to the continued enforcement of race-based preferences in the DBE Program as evidenced by their refusal to change the program in the face of Plaintiff's pre-litigation demands, and their acknowledgment that settlement talks would be pointless. As further proof of its dedication to maintaining race-based preferences, Caltrans recently submitted its proposed 2010 DBE Program for approval to the Federal Highway Administration. Caltrans' proposed 2010 DBE Program contains the exact same race- and sex-based preferences as its 2009 DBE Program. There is no question that Caltrans will adequately represent the interests of Movants in this case.

Plaintiff is aware of Movants' general interest in promoting racial preference programs and does not oppose Movants from participating in this case as *amici*. However Movants' motion to intervene should be denied.

///

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

# ARGUMENT

## I

## MOVANTS ARE NOT ENTITLED TO INTERVENTION AS A MATTER OF RIGHT

The Ninth Circuit has established the following four criteria for determining whether intervention should be allowed under Federal Rule of Civil Procedure 24(a), each of which must be demonstrated in order to provide a nonparty with a right to intervene: (1) the application must be timely; (2) the applicant must have a "significantly protectable" interest relating to the transaction that is the subject of the litigation; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the parties before the court. *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996). The burden is on the party seeking intervention to demonstrate that each of the elements are satisfied before the court will provide the nonparty with a right to intervene. *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).

It is well settled that "[w]hen an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 443 (9th Cir. 2006) (noting this principle is particularly applicable when the government deploys "its formidable resources" to defend the constitutionality of a statute (citations omitted)); *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (state defendants adequately represent native Hawaiian proposed intervenors' interest concerning the constitutionality of race-based privileges); *Glickman*, 82 F.3d at 838 (denying intervention to environmental organizations in a case concerning timber harvests on federal land, although organizations had "differences in opinion" with federal government). Other circuits follow similar rules. *See*, *e.g.*, *American Nat'l Bank & Trust Co. v. City of Chicago*, 865 F.2d 144, 148 n.3 (7th Cir. 1989) ("[A] presumption of adequacy of representation arises where the proposed intervenors and a party to the suit have the same ultimate objective."); *Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir. 1984) ("[w]hen the party seeking intervention has the same ultimate objective as a party to the

suit, a presumption arises that its interests are adequately represented"); *Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979) ("Where the party seeking to intervene has the same ultimate goal as a party already in the suit, courts have applied a presumption of adequate representation.").

Here, Movants' interests are adequately represented by Caltrans. They each pursue the same ultimate legal objective—a declaration from this Court that Caltrans' DBE Program is constitutional.

**A. Movants' Interests Are Adequately Represented, Because Their Legal Objective in This Litigation Is the Same as That of Caltrans**

Movants' ultimate objective in this litigation is the preservation of the DBE Program in its current form. Caltrans has the exact same objective and is before this Court defending the use of race- and sex-based preferences in its DBE Program. Here, Caltrans unquestionably represents Movants' interests.

Movants make evident in their proposed Answer that the objective they seek and the interest they aim to protect is the continued implementation of the DBE Program—the same objective as Caltrans. Caltrans' Answer contains the following:

> That this court declare that Defendants' Disadvantaged Business Enterprise 2009 Goal and Methodology ("2009 Goal and Methodology") is constitutional, valid and enforceable in its entirety and further that said 2009 Goal and Methodology does not violate the Fourteenth Amendment of the United States Constitution, 42 U.S.C. §§ 1981, 1983, 2000d or Article I, section 31 of the California Constitution.

Defs.' Answer at 8:24-28. In their proposed Answer, Movants' prayer is virtually identical:

> That this court declare that the race-conscious remedial measures in Defendants' 2009 DBE Program Goal and Methodology ("2009 Goal and Methodology") are constitutional, valid and enforceable and further that said 2009 Goal and Methodology does not violate the Fourteenth Amendment of the United States Constitution, 42 U.S.C. §§ 1981, 1983, 2000d or Article I, section 31, of the California Constitution.

Movants' Proposed Answer at 11:13-17. The only difference in these descriptions is that Movants reference the race-conscious remedial measures, while Caltrans asserts that the Goal and Methodology is constitutionally valid and enforceable "in its entirety." The entire Caltrans Goal and Methodology of course includes both race-neutral and race-conscious goals. Thus, there is no

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

difference between the ultimate objectives as articulated by Caltrans and Movants, because the constitutionality of the race-neutral goals are not challenged.

Movants cannot argue that their focus is narrower than Caltrans' interests merely because Caltrans' Answer refers to the DBE Program in its entirety. Movants misrepresent Plaintiff's litigation objective by claiming that Plaintiff seeks to terminate the entire DBE Program. Movants' Mem. at 3:14-15, 5:23-25. Plaintiff makes no contention that Defendants' race-neutral goals are unconstitutional, nor does Plaintiff request that this Court strike down the entire DBE Program. Plaintiff requests a declaration that the DBE Program

> is unconstitutional, invalid, and unenforceable *to the extent that it grants preferential treatment on the basis of race, sex, color, ethnicity, or national origin while discriminating against nonminority- and male-owned businesses, and businesses owned by male Hispanic Americans and male Subcontinent Asian Americans on the basis of race, sex, color, ethnicity, or national origin* in violation of the Fourteenth Amendment to the United States Constitution; 42 U.S.C. §§ 1981, 1983, 2000d; and Article I, section 31, of the California Constitution.

Compl. at 20:13-19 (emphasis added).

Similarly, Plaintiff seeks injunctive relief regarding only the race-conscious goals of the DBE Program. Plaintiff seeks to enjoin Caltrans from adopting, enforcing, attempting, or threatening to enforce the DBE Program "*insofar as the program discriminates against or grants preferential treatment to any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public contracting now and in the future.*" Compl. at 20:26-28 (emphasis added). Thus, Caltrans must defend only the constitutionality of the race-conscious elements in its DBE Program. Movants have attempted to manufacture a difference between the litigation goals of Movants and Caltrans when, in fact, none exists.

Further analysis of Caltrans' Answer and the Movants' proposed Answer reinforces the conclusion that Caltrans and the Movants have the same ultimate objective:

- Both Caltrans and Movants request a declaration that Caltrans is required by law to comply with 49 C.F.R. Part 26. *Compare* Defs.' Answer at 9:1-2 ("That this court declare Defendants are required by law to comply with regulations set forth in 49 CFR Part 26."), *with* Movants' Proposed Answer at 11:21-22 ("That this court declare Defendants are required by law to comply with regulations set forth in 49 CFR Part 26.").

- Both Caltrans and Movants request that Caltrans not be enjoined from implementing the DBE Program in its current form. *Compare* Defs. Answer at 9:3-

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

4 (Caltrans' Answer requests that "no injunction issue to enjoin the Defendants from implementing the 2009 Goal and Methodology."), *with* Movants' Proposed Answer at 11:23-34 ("That no injunction issue to enjoin the Defendants from implementing the 2009 DBE Program, including its Goal and Methodology."). There is no meaningful distinction between these prayers for relief.[1]

- Both Caltrans and Movants claim Caltrans' DBE Program is required by the United States Constitution. *Compare* Movants' Proposed Answer at 11:18-20 ("That this court Declare that . . . the race conscious remedial measures . . . are required by the Fourteenth Amendment of the United States Constitution as well as 42 U.S.C. §§ 1981, 1983, and/or 2000d."), *with* Defs.' Answer at 8:14-15 (Eighth Affirmative Defense claiming the "U.S. Constitution requires Defendants to implement the challenged program").

Thus, Movants do not seek intervention to argue for any change in Caltrans' DBE Program, but merely to see that the "current DBE program" is defended. Movants' Mem. at 9:14-15 ("The validity of the current DBE program is under attack . . ., the program must be defended in the instant action."). Perhaps most telling is Movants' admission that "[t]his is not a case where CEE [Coalition for Economic Equity] can simply file its own separate lawsuit to defend Caltrans' program." *Id.* at 9:13-14. It would seem the reason that Movants cannot file their own lawsuit, is because both Movants and Caltrans have the same ultimate objective.

Movants' reliance on *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998), is misplaced. *Dump Truck* contains little or no analysis of adequacy of representation, except for the observation that the employment interest of intervenors were more "narrow and parochial" than the interests of the public at large. *Id.* (citing *Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1995)).

In *Forest Conservation Council*, the State of Arizona and Apache County sought leave to intervene in a suit brought by environmental organizations against the United States Forest Service. 66 F.3d at 1491. The plaintiffs sought a temporary injunction prohibiting the United States Forest Service *and its contractors* from engaging in any timber harvests until the requirements of the National Environmental Policy Act (NEPA) and National Forest Management Act (NFMA) were met. *Forest Conservation Council*, 66 F.3d at 1492. Such an injunction would have affected

---

[1] Each party has defined the term "2009 DBE Program" *as* the 2009 Goal and Methodology. Compl. ¶ 1; Defs.' Answer ¶ 1 (each defining "2009 DBE Program" to mean the DBE Goal and Methodology for Federal Fiscal Year 2009); Movants' Proposed Answer ¶ 1 (referring just to "2009 DBE Program).

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

contracts in place between the federal government and intervenors, as well as hindered the management of forests by state and county agencies. *Id.* The objectives of the state and county intervenors were vastly narrower and different than the interest of the United States Forest Service, which was the lawful compliance with NEPA and NFMA.

In its analysis, the court first stated the well-established rule that adequate representation is presumed when a governmental body or office is the defendant. *Id.* at 1499. But the State and county were able to overcome that presumption because they had *different* interests than that of the United States Forest Service, which the federal government did not have a duty to represent. *Id.* Specifically, the plaintiffs sought an injunction that would affect the intervenors' *existing contracts* with the federal government. *Id.* at 1495. The court distinguished *Sierra Club v. United States EPA*, 995 F.2d 1478, 1482 (9th Cir. 1993), noting that the movants in *Sierra Club* were not allowed to intervene because they did not have existing contracts, and their economic interest was based upon a "bare expectation."

In the case at bar, Plaintiff is not seeking the invalidation of any executed contracts between Caltrans and prime contractors, or between prime contractors and DBE subcontractors. Hence, any property interests of Movants are, in fact, "bare expectation."

Furthermore, the Movants are the "exact constituents [the Defendants are] seeking to protect in this action." *United States v. City of Los Angeles*, 288 F.3d 391, 402 (9th Cir. 2002). The goal of the DBE Program, which is at the very heart of this litigation, is specifically designed to benefit minority and women disadvantaged business enterprises, the very same entities that Movants represent. *See* 49 C.F.R. § 26.1(b) (objective of the federal regulations is "[t]o create a level playing field on which DBEs can compete fairly for DOT-assisted contracts"); *see also* Movants' Mem. at 4:19-20; 5:19-21 (Movants members are DBEs).

Clearly this is not a case like *Dump Truck* or *Forest Conservation Council* in which the intervention applicants had more narrow, parochial interests than did the government defendants. This case is analogous to *City of Los Angeles*, wherein the Ninth Circuit affirmed the denial of intervention of right to individual and organizational community members who did not contest any portion of the consent decree at issue in that case, but who sought to intervene "merely to ensure

1 that it is strictly enforced." *City of Los Angeles*, 288 F.3d at 402.  Similarly, Movants do not contest any portion of the Caltrans DBE Program in this litigation, but seek to intervene merely to ensure that is defended.

Because both Caltrans and Movants have the same ultimate objective, Movants' interests are adequately represented by Caltrans, and the motion to intervene should be denied.

**B.  Movants Cannot Overcome the Presumption of Adequate Representation**

Movants argue that the burden of establishing inadequacy of representation is minimal, but as the Ninth Circuit has observed, the requirement is clearly "not without teeth." *Prete v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006).  The law of this Circuit imposes a high burden on a proposed intervenor challenging the adequacy of governmental representation.

To overcome the presumption of adequate representation by the government, intervenor applicants must make a "very compelling showing to the contrary" and demonstrate a likelihood that the government will "abandon and concede" a potentially meritorious position *California ex rel. Lockyer*, 450 F.3d at 443-44.

Here, Movants' arguments fail.  First, Plaintiff and Caltrans have already rejected the possibility of a settlement in this case. *See* Joint Status Report of August 17, 2009, at 7:3-5 (parties find the matter is not amenable to resolution by settlement).  In fact, Plaintiff contends that Caltrans' discriminatory race-conscious goals violate both the state and federal constitutions and the only remedy is the elimination of the discriminatory race-based goals.

Second, Caltrans has already shown that it is unwilling to eliminate its contract specific discriminatory goals. Prior to filing this lawsuit, Plaintiff submitted comments to Caltrans pointing out that its race- and sex-based goals were not justified by Caltrans' disparity study. Compl. ¶ 4. In spite of Plaintiff's protests, Caltrans implemented its discriminatory program.  Caltrans' continuing commitment to maintaining its race- and sex-based preference program can further be evidenced by the fact that it recently submitted its proposed 2010 DBE Program for approval to the Federal Highway Administration. Declaration of Ralph W. Kasarda, Ex. A (Caltrans' Proposed 2010 Program).  Caltrans' proposed 2010 DBE Program contains the exact same race- and sex-based preferences as its 2009 DBE Program. *Id.*

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

1  Third, Movants will not add any new information to the lawsuit. As Movants themselves
2  acknowledge, the DBE Program is based upon the BBC Research & Consulting, *Availability and
3  Disparity Study*. Movants' Mem. at 3-4. The Disparity Study includes information gathered from
4  individual minority- and women-owned businesses and twelve trade associations representing
5  hundreds of more minority- and women-owned businesses.[2] *Availability and Disparity Study*,
6  Appendix I, at 4-6. Thus, any evidence which Movants possess was already collected when
7  Caltrans and BBC Research and Consulting solicited public comments from Movants' members.
8  *See Availability and Disparity Study*, Appendix I (Summary of Anecdotal Interviews and Public
9  Hearing Testimony).

10  Fourth, as has been pointed out *supra*, Movants and Caltrans have the same ultimate
11  objective. Nowhere in Movants' motion for intervention, supporting memorandum, proposed
12  Answer, or supporting declarations do Movants indicate that their objective in intervening is to
13  expand the DBE Program to enlarge the number of racial groups preferred. *See* Movants' Mem.
14  at 12:21-23 (In the *past* Movants have argued for expansion of the program, but arguments for
15  current expansion are omitted.). The Movants simply seek to defend the current DBE Program,
16  which Caltrans is already doing. Clearly any attempt to expand the discriminatory program to
17  include other racial groups would cause the program to collapse in its entirety. The DBE
18  Program's only justification, the disparity study, is like a house of cards—just the slightest
19  disturbance will cause the flimsy structure to collapse.

20  Fifth, the Movants do not seek to alter the current percentage of race-conscious goals in this
21  litigation. To do so would require an attack on Caltrans' methodology, which would help expose
22  and highlight the weaknesses of the discriminatory DBE Program. Thus Movants make clear that
23  ///

---

[2] The twelve trade associations are: Asian Business Association, Black Business Association, Society of Hispanic Professional Engineers, Asian American Architects & Engineers, American Subcontractors Association California, Inc., Engineering & Utility Contractors Association, Filipino American Society of Architects & Engineers, Hispanic Contractor's Association, Consulting Engineers and Land Surveyors of California, Asian American Architects/Engineers Association, National Association of Minority Contractors, and California Community Connection. BBC Research & Consulting, *Availability and Disparity Study*, Appendix I, at 4-5 (2007), *available at* http://www.dot.ca.gov/hq/bep/study/Appendix%20I.pdf (last visited Oct. 13, 2009).

their objective in intervening is simply to defend Caltrans' "current DBE Program." Movants' Mem. at 9:14-15.

Sixth, Movants argue that their past disagreements with Caltrans over when the race- and sex-based goals should have been implemented somehow suggests inadequate representation. Movants' Mem. at 12. However, past disagreements with a government agency cannot overcome the presumption of adequate representation when the defendants and proposed intervenors share the same ultimate objective. *See Oregon Envtl. Council v. Oregon Dep't of Envtl. Quality*, 775 F. Supp. 353, 359 (D. Or. 1991) (refusing intervention to environmental group because of current shared ultimate objective, even though the group had previously sued the government agency over environmental issues).

Last, Movants argue they will offer perspectives and knowledge that Plaintiff and Caltrans are likely to lack, overlook, or undervalue. Movants' Mem. 10:6-7. This argument is without merit. In *Blake v. Pallan*, 554 F.2d 947 (9th Cir. 1977), the California corporations commissioner appealed the denial of intervention in a class action suit involving alleged violations of state and federal securities laws. The commissioner argued that the case would be benefited by his knowledge of state securities laws. *Id.* at 955. In rejecting this argument, the Ninth Circuit held that the proposed intervenor shared the same ultimate objective as the plaintiffs, since he could not explain what legal arguments or tactical decisions he would offer that the plaintiffs were unable or unwilling to present. *Id.*

Like the commissioner in *Blake*, here, the Movants do not articulate what legal arguments or tactical decision they would offer that Caltrans is unable or unwilling to present. Even if Movants had different perspectives on how best to defend the current DBE Program in this litigation, that would amount to nothing more than minor differences in legal strategy. But "mere[] differences in strategy . . . are not enough to justify intervention as a matter of right." *See City of Los Angeles*, 288 F.3d at 402-03.

Here, Caltrans will without a doubt adequately represent Movants' interests. Defendant Olivia Fonseca, Deputy Director for Civil Rights of Caltrans, is specifically "responsible for ensuring the participation of small and disadvantaged businesses in contracting activities."

California Department of Transportation website, Biographies, Olivia Fonseca.[3] The Civil Rights division of Caltrans is "*dedicated* to increasing the participation" of DBEs "in both State and federal contracting and procurements," and ensures "non-discrimination in the execution of contracts." California Department of Transportation website, Business tab, Civil Rights.[4] Ms. Fonseca, Caltrans' Civil Rights Department, and Movants all have the same interest. *See* Movants' Mem. at 4:13-15 (CEE has an interest in ensuring its members are not unfairly excluded from public contracting systems); *id.* at 5:15-17 (NAACP has interest in the elimination of racial discrimination). Caltrans and its officers are "dedicated" to their DBE Program, and as Movants themselves note, "Caltrans can be expected to defend its program." Movants' Mem. at 1:21-22.

Movants offer nothing more than speculation regarding the inadequacy of Defendants' representation. *See* Movants' Mem. at 10:21-22 (arguing that "no one can know" whether Movants' and Defendants' ultimate objectives diverge). But Movants are required to make a "very compelling showing" to rebut the presumption of adequate representation, not unsupported assertions. This they have failed to do. Accordingly, there is no reason to question Defendants' commitment to, or capability of, adequately defending their DBE Program. *See Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765 (9th Cir. 1997) (Secretary of Health and Human Services capable of adequately representing her interest in defending her own policy) (citing *Hopwood v. Texas*, 21 F.3d 603, 605-06 (5th Cir. 1994).

## II

## MOVANTS ARE NOT ENTITLED TO PERMISSIVE INTERVENTION

Federal Rule of Civil Procedure 24(b)(2) provides for permissive intervention based on the discretion of the district court. *See Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989), *aff'd*, 495 U.S. 82 (1990) ("Rule 24(b) necessarily vests 'discretion in the district court to determine the fairest and most efficient method of handling a case.' "). In making that determination, a district

---

[3] *Available at* http://www.dot.ca.gov/hq/paffairs/bios/fonseca.htm (last visited Oct. 13, 2009).

[4] *Available at* http://www.dot.ca.gov/hq/bep/index.htm (last visited Oct. 13, 2009).

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

1 court must consider both whether the intervention will unduly delay the litigation and whether
2 permitting intervention will serve judicial economy. *Id.* at 529-31.

3       Even if the Movants can satisfy the requirements of permissive intervention under
4 Rule 24(b), they are not automatically entitled to intervene. *Id.* at 530; *see also Donnelly v.*
5 *Glickman*, 159 F.3d 405, 412 (9th Cir. 1989) ("Even if an applicant satisfies those threshold
6 requirements, the district court has discretion to deny permissive intervention.").

7       Here, Movants' intervention would be repetitive, and would impair the efficiency of the
8 litigation. Movants present no new issues and their intervention would serve no purpose other than
9 delay. *See Ingebretsen on Behalf of Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274 (5th Cir.
10 1996), *reh'g & reh'g en banc denied, cert. denied*, 519 U.S. 965 (1996) (organization denied
11 permissive intervention because it brought no new issues to action, and would have only caused
12 delay); *Hopwood*, 21 F.3d at 605-06 (civil rights group denied permissive intervention due to
13 adequacy of representation, and the likelihood of increased costs and delay). Permitting Movants
14 to use this case as a platform for presenting its policy arguments on the political merits of racial-
15 and sex-based preferences in public contracting would be unfair to Plaintiff and the Court and
16 would disrupt the orderly and efficient processing of Plaintiff's complaint. Fairness and efficiency
17 counsel against Movants' intervention under Rule 24(b).

18       School desegregation cases like *Spangler v. Pasadena Bd. of Educ.*, 552 F.2d 1326 (9th Cir.
19 1977), upon which Movants rely, have no application to this matter. *Spangler* dealt with parents
20 who argued that the school board's operation of certain schools violated the school desegregation
21 plan. *Id.* at 1328. The present case presents no scenario where government action has adversely
22 affected third parties, who then seek intervention to remedy a harm. Here, the Movants have no
23 disagreement with Caltrans over the 2009 DBE Program, but seek intervention merely to defend
24 the program.

25       A district court does not abuse its discretion in denying permissive intervention when the
26 proposed intervenors' interests are adequately represented by the existing parties. *See People of*
27 *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775 (9th Cir. 1986) (court could not say the
28 district court abused its discretion since the intervenor's interests were adequately represented).

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

Caltrans is well suited to, and properly charged with, representing current and prospective minority disadvantaged business enterprises in this matter. Caltrans will without any doubt represent the Movants' interests adequately in this case. Movants' policy arguments regarding racial preference programs would best be presented in the case through Movants' participation as *amici*.

**CONCLUSION**

For all of these reasons, Plaintiffs respectfully request that the Court deny the Movants' Motion to Intervene.

DATED: October 16, 2009.

Respectfully submitted,

SHARON L. BROWNE
RALPH W. KASARDA
ANTONIO J. SENAGORE


By     s/Ralph W. Kasarda
        RALPH W. KASARDA

Attorneys for Plaintiff

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747