BINGHAM McCUTCHEN LLP
MICHAEL I. BEGERT (SBN 141969)
michael.begert@bingham.com
SUJAL J. SHAH (SBN 215230)
sujal.shah@bingham.com
ERIN S. CONROY (SBN 241042)
erin.conroy@bingham.com
CARLOS P. MIÑO (SBN 247022)
carlos.mino@bingham.com
Three Embarcadero Center
San Francisco, CA 94111-4067, U.S.A.
Telephone: 415.393.2000
Facsimile: 415.393.2286

LAWYERS' COMMITTEE FOR CIVIL RIGHTS
OREN SELLSTROM (SBN 161074)
KENDRA FOX-DAVIS (SBN 248757)
131 Steuart Street, Suite 400
San Francisco, CA 94105
Telephone: (415) 543-9697
Facsimile: (415) 543-0296
Email: osellstrom@lccr.com

[*Additional Counsel listed on signature pages.*]

Attorneys for Defendant-Intervenors
Coalition for Economic Equity and National Association for the Advancement of Colored People, San Diego Chapter

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| ASSOCIATED GENERAL CONTRACTORS OF AMERICA, SAN DIEGO CHAPTER, INC., a nonprofit California corporation,<br><br>Plaintiff,<br>v.<br><br>CALIFORNIA DEPARTMENT OF TRANSPORTATION, et al.,<br><br>Defendants,<br><br>COALITION FOR ECONOMIC EQUITY and NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, SAN DIEGO CHAPTER,<br><br>Proposed Defendant-Intervenors. | No. 2:09-cv-01622-JAM-GGH<br><br>**REPLY BRIEF IN SUPPORT OF MOTION OF COALITION FOR ECONOMIC EQUITY AND NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, SAN DIEGO CHAPTER FOR LEAVE TO INTERVENE UNDER FEDERAL RULE OF CIVIL PROCEDURE 24**<br><br>Date: November 4, 2009<br>Time: 9:00 a.m.<br>Place: Courtroom 6<br>Judge: Hon. John A. Mendez |

TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. PLAINTIFF CONCEDES THAT THE COURT HAS DISCRETION TO GRANT PERMISSIVE INTERVENTION ..... 2

B. THE DBEs HAVE A RIGHT TO INTERVENE ..... 3

1. Plaintiff concedes the DBEs have met the first three requirements for intervention of right ..... 3

2. Caltrans will not adequately represent the DBEs' interests ..... 4

a. Caltrans is not "charged by law" with representing the DBEs' interests ..... 5

b. The DBEs have different objectives ..... 7

3. The DBEs have overcome any presumption ..... 8

III. CONCLUSION ..... 13

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Associated General Contractors of California, Inc. v. City and County of San Francisco*, 748 F.Supp. 1443 (N.D. Cal. 1990) .......... 3

*Associated General Contractors of California, Inc. v. City and County of San Francisco*, 813 F.2d 922 (9th Cir. 1987) .......... 4

*Associated General Contractors of California, Inc. v. Coalition for Economic Equity*, 950 F.2d 1401 (9th Cir. 1991) .......... 3

*Associated General Contractors of California v. San Francisco United School Dist.*, 616 F.2d 1381 (9th Cir. 1980) .......... 3

*Associated General Contractors of California v. Secretary of Comm. of the United States Dep't of Comm.*, 459 F.Supp. 766 (C.D. Cal. 1978) .......... 8

*Associated General Contractors of Connecticut, Inc. v. City of New Haven*, 41 F.3d 62 (2d Cir. 1994) .......... 4

*Associated Utility Contractors of Maryland, Inc. v. Mayor and City Council of Baltimore*, 83 F. Supp. 2d 613 (D. Md. 2000) .......... 4

*Builders Ass'n of Greater Chicago v. City of Chicago*, 298 F. Supp. 2d 725 (N.D. Ill. 2003) .......... 4, 11

*Builders Ass'n of Greater Chicago v. County of Cook*, 256 F.3d 642 (7th Cir. 2001) .......... 4

*California ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006) .......... 9, 13

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184 (9th Cir. 1998) .......... 9, 10

*Conservation Law Foundation v. Mosbacher*, 966 F.2d 39 (1st Cir. 1992) .......... 7

*Contractors Ass'n of Eastern Pennsylvania v. City of Philadelphia*, 6 F.3d 990 (3d Cir. 1993) .......... 4

*Coral Construction Co. v. King County*, 941 F.2d 910 (9th Cir. 1991) .......... 11, 12

*Defenders of Wildlife v. Johann*, No. C-04-4512-PJH, 2005 WL 3260986 (N.D. Cal. Dec. 1, 2005) .......... 8

*Engineering Contractors Ass'n of South Florida, Inc. v. Metropolitan Dade County*, 122 F.3d 895 (11th Cir. 1997) ........................ 3

*Forest Conserv. Council v. U.S. Forest Service*, 66 F.3d 1489 (9th Cir. 1995) ........................ 3, 5, 6, 8

*Grutter v. Bollinger*, 188 F.3d 394 (6th Cir. 1999) ........................ 12

*Kleissler v. U.S. Forest Service*, 157 F.3d 964 (3d Cir. 1998) ........................ 2

*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir. 2002) ........................ 2

*League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997) ........................ 4

*Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994 (8th Cir. 1993) ........................ 6

*National Ass'n of Home Builders v. San Joaquin Valley Unified Air*, No. CV-07-0820 LJO DLB, 2007 WL 2757995 (E.D. Cal. Sept. 21, 2007) ........................ 9

*Natural Resources Defense Council v. Kempthorne*, 539 F. Supp. 2d 1155 (E.D. Cal. 2008) ........................ 9

*Northwest Forest Res. Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996) ........................ 4, 11

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, No. Civ. S-06-2845 LKK/JFM, 2007 WL 3034887 (E.D. Cal. Oct. 16, 2007) ........................ 8, 9

*Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994) ........................ 6

*Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) ........................ passim

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) ........................ passim

*Venegas v. Skaggs*, 867 F.2d 527 (9th Cir. 1989) ........................ 2

*Washington State Building & Construction Trades Council v. Spellman*, 684 F.2d 627 (9th Cir. 1982) ........................ 3

*Wygant v. Jackson Board of Educ.*, 476 U.S. 267 (1986) ........................ 12

**OTHER AUTHORITIES**

6 Moore's Federal Practice § 24.03[4][a] [i] (2004)........ 8

Fed. R. Civ. Proc. Rule 24(a) ........ 3, 4, 8, 13

Fed. R. Civ. Proc. Rule 24(b)........ 2, 13

The Coalition for Economic Equity ("CEE") and National Association for the Advancement of Colored People, San Diego Chapter ("NAACP") (collectively, the "DBEs") submit this reply brief in support of the motion to intervene (the "Motion").

## I. INTRODUCTION

Defendant Caltrans does not oppose intervention by CEE and NAACP.

Plaintiff concedes that permissive intervention would not be an abuse of discretion but suggests that the Court deny intervention based on its wholly unsupported assertion that intervention will "impair the efficiency of the litigation." On the contrary, intervention will ensure that the parties most directly affected by the lawsuit are actually represented before the Court. The Court should permit the DBEs' intervention.

Moreover, the DBEs have demonstrated that they have a right to intervene. Plaintiff has conceded the application of every criteria for intervention *as a matter of right* save one: whether the DBEs' interests in this case diverge from those of Caltrans. Plaintiff's argument rests entirely on presumptions that may arise either when the proposed intervenor seeks the same ultimate objective as an existing party or when an existing governmental party is "charged by law" with representing the interests of the movant. Plaintiff confuses interests with outcomes. There can be little doubt that the *interests* of the DBEs (representing contractors seeking to compete on a level playing field for federal transportation contracts) differ from those of Caltrans, which represents the broader public interest in having safe, well-maintained roads and in securing federal funding for its activities. Moreover, even if the interests of Caltrans and the DBEs were perfectly aligned, history demonstrates that, at a minimum, Caltrans *might* not adequately pursue those interests, which is the standard for inadequate representation. *United States v. City of Los Angeles*, 288 F.3d 391, 402 (9th Cir. 2002). Significantly, Caltrans does not disagree. And the very short history of this litigation shows Caltrans is unlikely to pursue at least one meritorious position in defense of its DBE program that the DBEs will make – i.e., that Caltrans's own participation in an exclusionary public contracting system helps justify the DBE program. Moreover, the facts demonstrate that Caltrans cannot be considered a governmental party "charged by law" with representing the DBEs' interests. As such, neither presumption

applies here. And both would be rebutted by the clear evidence of divergent interests that the DBEs submitted with their motion.

The DBEs have shown that their interests will not be adequately represented by Caltrans. The DBEs have a right to intervene to protect those interests. This court should find that the DBEs are entitled to intervene.

## II. ARGUMENT

### A. PLAINTIFF CONCEDES THAT THE COURT HAS DISCRETION TO GRANT PERMISSIVE INTERVENTION

Plaintiff does not, and cannot, argue that permitting intervention would be error: "Federal Rule of Civil Procedure 24(b)(2) provides for permissive intervention based on the discretion of the district court." Opp. at 11. Plaintiff cites no case reversing the District Court for granting intervention under Rule 24(b). In fact, the only cases Plaintiff cites where a decision on permissive intervention was overturned are two cases in which the Court of Appeals reversed the District Court's erroneous *denial* of permissive intervention and ordered the District Court to permit intervention. *See* Opp. at 7-8 and 11-12 (citing *City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002), and *Venegas v. Skaggs*, 867 F.2d 527 (9th Cir. 1989), *aff'd*, 495 U.S. 82 (1990)). Nothing prevents the Court from granting this motion.

Plaintiff does not contest that the DBEs have "a claim or defense that shares with the main action a common question of law or fact" or that the DBEs' participation – as the parties most directly affected by the DBE program – will facilitate an equitable result. Mot. at 13. Moreover, Plaintiff does not dispute the significance of the issues involved, the value of fully developing those issues, and the public interest in broadened access to the courts. *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002) ("[T]he magnitude of this case is such that both Applicants' intervention will contribute to the equitable resolution of this case" and "the presence of intervenors would assist the court in its orderly procedures leading to the resolution of this case, which impacted large and varied interests."); *Kleissler v. U.S. Forest Service*, 157 F.3d 964, 971 (3d Cir. 1998) ("The reality is that [National Environmental Policy Act] cases frequently pit private, state, and federal interests against each

other. Rigid rules in such cases contravene a major premise of intervention – the protection of third parties affected by pending litigation. Evenhandedness is of paramount importance.”).

While Plaintiff asks the Court to exercise its discretion to deny intervention, Plaintiff provides neither facts nor analysis to support its bald assertion that “intervention would be repetitive, and would impair the efficiency of the litigation.” Opp. at 12. To the contrary, as the cases (cited in the Motion and ignored by Plaintiff) hold, intervention would “serve[] both efficient resolution of issues and broadened access to the court.” *Forest Conserv. Council v. U.S. Forest Service*, 66 F.3d 1489, 1496 n.8 (9th Cir. 1995); *see also* Mot. at 13-14.

The DBEs should be permitted to intervene.

### B. THE DBEs HAVE A RIGHT TO INTERVENE

#### 1. Plaintiff concedes the DBEs have met the first three requirements for intervention of right.

Plaintiff does not dispute the overarching principles that guide courts in ruling on intervention: that Rule 24 is to be liberally construed in favor of intervention to broaden access, and that courts are “guided primarily by practical and equitable considerations” in assessing whether intervention is appropriate. *City of Los Angeles*, 288 F.3d at 397-398; *see also Washington State Building & Construction Trades Council v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982), *cert. denied*, 461 U.S. 913 (reversing district court’s erroneous denial of motion for intervention as a matter of right). Under those standards, these DBEs and others have regularly participated as intervenors in similar contracting equity cases in federal court.[1]

---

[1] The following is a non-exhaustive list of cases where DBEs intervened when a contracting equity program was challenged: *Associated General Contractors of California, Inc. v. Coalition for Economic Equity*, 950 F.2d 1401 (9th Cir. 1991) (Coalition for Economic Equity as defendant-intervenor); *Associated General Contractors of California v. San Francisco United School Dist.*, 616 F.2d 1381 (9th Cir. 1980) (National Association of Minority Contractors and Minority Contractors of Northern California as appellant-intervenors); *Associated General Contractors of California, Inc. v. City and County of San Francisco*, 748 F.Supp. 1443 (N.D. Cal. 1990) (Coalition for Economic Equity, San Francisco Hispanic Chamber of Commerce, Asian, Inc., San Francisco Black Chamber of Commerce as defendant-intervenors); *Engineering Contractors Ass’n of South Florida, Inc. v. Metropolitan Dade County*, 122 F.3d 895 (11th Cir. 1997) (Black Business Association, Inc., Allied Minority Contractors Association, Inc., National

(Footnote Continued on Next Page.)

Nor is there any dispute that the DBEs have satisfied the first three elements required for a party to intervene as a matter of right under Fed. R. Civ. Proc. Rule 24(a)(2): the DBEs (1) timely filed the Motion, (2) have a "significantly protectable" interest relating to the transaction that is the subject of the litigation, and (3) are so situated that the disposition of the action may, as a practical matter, impair or impede the DBEs' ability to protect that interest. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (citing *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996)). Plaintiff's Opposition fails to argue otherwise; therefore Plaintiff has waived any argument regarding those elements. Moreover, Plaintiff similarly fails to argue that any existing party will be prejudiced by this intervention.

Plaintiff's only challenge to intervention as of right is its opinion that Caltrans will adequately represent the DBEs' interests. As demonstrated below, however, a "practical and equitable" analysis of the issues underlying this litigation makes clear that this is not so.

**2. Caltrans will not adequately represent the DBEs' interests.**

Plaintiff's argument rests entirely on presumptions that arise either when the proposed intervenor seeks the same ultimate objective as an existing party or when an existing governmental party is "charged by law" with representing the interests of the movant. Neither

---

(Footnote Continued from Previous Page.)

Association for the Advancement of Colored People, Miami Dade Branch as defendant-intervenors); *Associated General Contractors of Connecticut, Inc. v. City of New Haven*, 41 F.3d 62 (2d Cir. 1994) (B & T Contractors, Inc. as defendant-intervenor); *Associated General Contractors of California, Inc. v. City and County of San Francisco*, 813 F.2d 922 (9th Cir. 1987) (San Francisco Black Chamber of Commerce as defendant-intervenor); *Builders Ass'n of Greater Chicago v. County of Cook*, 256 F.3d 642 (7th Cir. 2001) (Association of Asian Construction Enterprises as defendant-intervenor ); *Contractors Ass'n of Eastern Pennsylvania v. City of Philadelphia*, 6 F.3d 990 (3d Cir. 1993) (United Minority Enterprise Associates, Inc. as defendant-intervenor); *Builders Ass'n of Greater Chicago v. City of Chicago*, 298 F. Supp. 2d 725, 734 (N.D. Ill. 2003) (Black Contractors United, Federation of Women Contractors, Hispanic American Construction Ind. Ass'n, Ill. Ass'n of Minority Contractors as defendant-intervenors); *Associated Utility Contractors of Maryland, Inc. v. Mayor and City Council of Baltimore*, 83 F. Supp. 2d 613 (D. Md. 2000) (Maryland Minority Contractors Association, Inc. as defendant-intervenor).

presumption applies here, and, even if it did, it would be rebutted by the clear evidence of divergent interests that the DBEs submitted with their motion. This evidence may not be ignored, as Plaintiff attempts to do. "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

**a. Caltrans is not "charged by law" with representing the DBEs' interests.**

Plaintiff's attempts to make use of cases that presume adequate representation by a governmental actor are unavailing. Unlike the situation here, the presumption arises when the government is "*charged by law* with representing the interests of the absentee…." *City of Los Angeles*, 288 F.3d at 401 (citations omitted) (emphasis added); *see also Forest Conserv. Council*, 66 F.3d at 1499 ("However, 'a presumption of adequate representation generally arises when the representative is a governmental body or officer charged by law with representing the interests of the absentee.'"). "The Forest Service is not charged with a duty to represent [proposed intervenors'] asserted interests in defending against the issuance of an injunction. The government must present the broad public interest, not just the economic concerns of the [proposed intervenors]." *Id.*

Caltrans has no such charge to represent the interests of the DBEs, nor has Plaintiff argued that it does. In the *City of Los Angeles* case cited by Plaintiff, the federal government affirmatively brought suit against the City of Los Angeles over its police practices, to vindicate federal civil rights laws that the U.S. Department of Justice is charged with enforcing. *City of Los Angeles*, 288 F.3d at 396. By contrast, here, Caltrans is only reluctantly before this Court, having been brought into the litigation by Plaintiff. In this respect, the underlying statutory scheme at issue and Caltrans's history are particularly relevant – and noticeably ignored by Plaintiff in its Opposition. It is the federal government, not Caltrans, that has enacted a program designed to give the DBEs equal opportunity to compete for contracting. Caltrans implements the program because it *must* do so in order to receive federal funds. And, as

the DBEs demonstrated in their opening brief, Caltrans has been by turns slow, reluctant, and reticent to fully implement this federal mandate. Earlier this year, the U.S. Department of Transportation ("DOT"), in a harshly-worded letter, took Caltrans to task for the fact that DBE participation "has steadily decreased over the past four federal fiscal years…." CEE Decl., Ex. B. The federal agency warned that "[w]e cannot afford any further delay by Caltrans in implementing DBE contract goals," and demanded that Caltrans act "immediately" or face federal sanctions. *Id.*[2]

Plaintiff ignores this clear and unmistakable real-world evidence raising serious concerns about whether Caltrans will adequately defend the DBEs' interests - evidence that must be taken as true. *Southwest Ctr. for Biological Diversity*, 268 F.3d at 820. Instead, Plaintiff cites only to a sentence from Caltrans's website that describes Caltrans's Civil Rights Division as "dedicated" to the DBE program. Opp. at 11.[3] This does not rebut the DBEs' evidence.

Where the government party is not charged by law with representing only the narrow interest of the proposed intervenors, but the general public, intervention is regularly granted in the Ninth Circuit, this District, and federal courts around the country. Mot. at 9-11; *see* infra pp. 9-10. For example, in *Forest Conserv. Council*, the Ninth Circuit found that the Forest Service "is required to represent a broader view than the more narrow, parochial interests of the [intervenors]…. Accordingly, [intervenors] have satisfied the minimal showing required that the Forest Service may not adequately represent their interests in defending against the issuance of a broad injunction." *Forest Conserv. Council*, 66 F.3d at 1499; *accord Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994) ("The government must present the broad public interest, not just the economic concerns of the timber industry."); *Mille Lacs Band of Chippewa*

---

[2] Plaintiff has conspicuously chosen *not* to sue the federal agencies whose laws and regulations are at issue and who have chastised Caltrans for inadequate enforcement.

[3] Similarly, Plaintiff suggests without proof that adequacy of representation should be presumed because Caltrans can deploy "formidable resources" to defend this action. Opp. at 4. Given the current budget crisis, this is patently false. *See* Joint Status Report filed August 17, 2009, at 2 (Caltrans requesting scheduling accommodations because "Defendant's offices are closed and their attorneys are furloughed three days each month….").

*Indians v. Minnesota*, 989 F.2d 994, 1001 (8th Cir. 1993) (finding that, because the county's and landowners' "local and individual interests" were not shared by the general state citizenry, the State would not adequately represent those interests); *Conservation Law Foundation v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (noting that "the Secretary [of Commerce]'s judgments are necessarily constrained by his view of the public welfare").

**b. The DBEs have different objectives.**

Plaintiff also attempts to rely on cases that presume adequate representation where the potential intervenor has the same "ultimate objective" as an existing party. Yet the Ninth Circuit has instructed that "[i]n assessing the adequacy of representation, the focus should be on the 'subject of the action,' not just the particular issues before the court at the time of the motion." *Southwest Ctr. for Biological Diversity*, 268 F.3d at 823 (reversing district court's order denying Applicants' motion for leave to intervene as of right). And in complex and dynamic litigation, where the "ultimate objective" is not necessarily straightforward, the Ninth Circuit has questioned whether the presumption of adequate representation even attaches. *See id.* ("There is some question whether the presumption of adequacy applies at all here because complexity makes the determination of an 'ultimate objective' in this case more difficult than in [*Northwest Forest Resource Council*].").

Both Caltrans and the DBEs hope to defeat Plaintiff. But the inquiry into "ultimate objectives" cannot end there. At the level of generality invoked by Plaintiff, *all* defendants share the same goal: dismissal of the lawsuit. Plaintiff argues that this common goal proves that the interests of Caltrans and the DBEs are identical. Accepting this argument, however, would mean that no one could ever intervene as a defendant because the intervenor will always share with the original defendant the objective of eliminating the lawsuit. This is not the law. Rather, where intervenors have different interests in achieving this goal, they should be permitted to intervene. Here, the DBEs have demonstrated that they seek the dismissal of this lawsuit for different reasons, and with greater intensity, than Caltrans. *See* discussion of Defendant-Intervenors' and Caltrans's divergent interests, Section II.B.3 below.

Moreover, the binary set of outcomes suggested by Plaintiff is unrealistic. In

conflating interests with outcomes, Plaintiff assumes that there can be only two results in this case: total victory for Plaintiff or total victory for Defendant. In reality, litigation rarely results in such a binary outcome. The vast majority of cases conclude through negotiated compromises, and those few that are not resolved through settlement result in a range of partial victories and partial losses. Here, the "ultimate objective" is quite clearly a moving target, since federal law requires that federal funding recipients set new goals and have a new DBE program approved each fiscal year. Thus, while Plaintiff's Complaint seeks an injunction against Caltrans's 2008-2009 DBE program, this program will soon be superseded by the 2009-2010 program, as Plaintiff points out in its Opposition. And by next year, before trial in this case is even scheduled to begin, Caltrans is scheduled to submit yet another new program and new goals to the federal DOT for approval.

In short, to claim now that Caltrans and the DBEs have the same "ultimate objective," simply on the basis of initial pleadings, is to ignore the divergent interests of the parties, the evidence in the Motion, and the dynamic nature of complex litigation.

**3. The DBEs have overcome any presumption.**

The Court should not apply the presumption of adequate representation here, but, if it does, the unrebutted evidence of conflicting interest easily overcomes that presumption.

The Ninth Circuit construes Rule 24 liberally in favor of movants for intervention. *City of Los Angeles*, 288 F.3d at 397-398. Given the modest burden on the DBEs to show a lack of adequate representation, any "*doubts about adequacy of representation should be resolved in favor of the intervenor*." *Defenders of Wildlife v. Johann*, No. C-04-4512-PJH, 2005 WL 3260986, at *7 (N.D. Cal. Dec. 1, 2005) (emphasis added) (citing *Forest Conserv. Council*, 66 F.3d at 1498; 6 Moore's Federal Practice § 24.03[4][a] [i] (2004)); *see also Associated General Contractors of California v. Secretary of Comm. of the United States Dep't of Comm.*, 459 F.Supp. 766, 771 (C.D. Cal. 1978) (vacated on other grounds) (granting intervention of right after acknowledging that the Court must resolve any doubts on the question of adequacy of representation in favor of permitting intervention); *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, No. Civ. S-06-2845 LKK/JFM, 2007 WL 3034887, at *14 (E.D. Cal.

Oct. 16, 2007). While Plaintiff argues that the DBEs must make a "very compelling showing" of inadequacy, the case it cites suggests only that this standard may be appropriate in instances – unlike the instant one – where the government is charged by law with representing potential intervenors and where the interests of the parties are aligned. *See California ex rel. Lockyer v. United States*, 450 F.3d 436, 443-44 (9th Cir. 2006). Moreover, the *Lockyer* case supports the DBEs, as the Court even there reversed a denial of intervention of right. *See infra* at 13.

When a law or government action is challenged, the entities protected by the law or action have a right to intervene to represent their *interests* (i.e., protection under the law), even if the government defendant shares the intervenor's *objective* (i.e., defeating the challenge). *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184 (9th Cir. 1998); *see also S. Yuba River Citizens League*, 2007 WL 3034887, at *14 ("Even where the would-be intervener has the same 'ultimate objective' as some of the parties, intervention may still be appropriate if its interests might diverge from those of the existing parties"); *National Ass'n of Home Builders v. San Joaquin Valley Unified Air*, No. CV-07-0820 LJO DLB, 2007 WL 2757995, *4 (E.D. Cal. Sept. 21, 2007) (noting that "[a]lthough the Ninth Circuit has recognized a general presumption that the government will adequately represent the interests of the public at large, the presumption is overcome…where the proposed interveners have 'more narrow, parochial interests' than the parties" and granting intervention to environmentalist organizations because "[w]hile Proposed Interveners and the District share a general interest in public health, the District has a much broader interest in balancing the need for regulations with economic considerations."); *Natural Resources Defense Council v. Kempthorne*, 539 F. Supp. 2d 1155, 1187-1188 (E.D. Cal. 2008) ("the Federal Defendants cannot adequately represent the interests of absent contractors because they represent the government and a broad set of interests that are not the same as [the absent contractors]"); *Southwest Ctr. for Biological Diversity*, 268 F.3d at 823 (questioning district court's finding that ultimate objective was identical and reversing denial of intervention where the "[t]he priorities of the defending government agencies are not simply to confirm the Applicants' interests in the [contested government action]"). Here, Caltrans represents the public at large and the public's interests in having safe, well-maintained

roads; its primary objective is in having sufficient funding to realize these interests.  It does not represent the DBEs exclusively, or even primarily; this is shown by the very institution of a federal program to protect the DBEs' rights.  Caltrans's survival does not depend on whether highway and transportation contracts are equitably awarded; the DBEs' survival does.

Similarly, in *Dump Truck*, public works contractors challenged the constitutionality of California's Prevailing Wage Law by suing several state agencies, including Caltrans, with authority to enforce the law.  *Dump Truck*, 152 F.3d at 1186.  The court permitted intervention by IBT, the union representing workers who benefited from the prevailing wage law.  *Id.*  The Ninth Circuit affirmed, reasoning that "because the employment interests of IBT's members were *potentially more narrow and parochial than the interests of the public at large*, IBT demonstrated that the representation of its interests by the named defendants-appellees may have been inadequate."  *Id.* at 1190 (internal citation omitted).  As in *Dump Truck*, Caltrans represents the interest of the public at large, and the DBEs represent the "more narrow and parochial" interests of their members.  As *Dump Truck* held, those interests may be inadequately protected by Caltrans even though Caltrans shared the ultimate objective of defeating the lawsuit.

In analyzing whether representation is adequate, the Ninth Circuit focuses on the divergence of interests and delves beneath surface similarities in "ultimate objectives."  *See Southwest Ctr. for Biological Diversity*, 268 F.3d at 822-823.  "While the [government defendant] states that it believes it shares with Applicants the same 'ultimate objective' in the preservation of the [challenged action]" the parties' interest might diverge in two ways that are relevant here: "(1) the [government's] range of considerations in development is broader than the profit-motives animating developers [or contractors]; and (2) developers have different duties under the Plans relating to mitigation."  *Id.* (overturning denial of intervention based on determination by district court that "Applicants and the City shared the same 'ultimate objective' in defending the issuance by [U.S. Fish & Wildlife Service] of the City's [incidental take permit] and defending the [joint governmental action]" since, despite a shared objective to defend the challenged action, "[the Government] in this case cannot be expected successfully to safeguard Applicants' legally protectable interests.") (citations omitted).

The DBEs' Motion demonstrates that Caltrans's interests differ in important respects. *See* Mot. at 4-5 and 11-12; CEE Decl., ¶¶ 7-9 and Exs. A-D. Over the DBEs' fervent objections, Caltrans previously suspended the race- and gender-conscious provisions of its DBE program. The DBEs actively pressed Caltrans to reinstitute these provisions after the Availability and Disparity Study confirmed they were necessary to guard against discrimination and exclusion. Mot. at 4-5 and 11-12. Such advocacy has resulted in substantial disagreements between the DBEs and Caltrans *over the very program at issue in this litigation*.[4] Mot. at 4-5 and 11-12. Plaintiff neither disputes these differences nor discredits their significance. Plaintiff provides nothing to rebut the DBEs' showing that Caltrans *might not* adequately represent the interests of minority contractors, which is all that must be shown under Ninth Circuit precedent. *City of Los Angeles*, 288 F.3d at 402 (noting the "minimal showing [] to establish that [a government] defendants' representation 'may' be inadequate" and granting intervention where "the record of this case and the past dealings of the parties indicate a marked divergence of positions concerning key elements of the decree and underlying theories of liability.").

The DBEs also show the inadequacy of Caltrans's representation by providing evidence that they lend a perspective that would otherwise be missing – namely that of the very businesses who are systematically excluded from equal contracting opportunity. Plaintiff assumes that its narrow view of the evidence will prevail, and that the DBEs will have nothing to add to the litigation because Caltrans's Availability and Disparity Study is the only evidence the Court will consider. *See* Opp. at 9. But Plaintiff's narrow view is wrong. The Ninth Circuit recognizes that when race-conscious programs like Caltrans's DBE program are challenged, a court can consider post-enactment evidence of discrimination in examining the constitutionality of the program. *See, e.g., Coral Construction Co. v. King County*, 941 F.2d 910, 919-21 (9th Cir. 1991); *see also Builders Ass'n of Greater Chicago v. City of Chicago*, 298 F. Supp. 2d 725,

---

[4] This is unlike *Northwest Forest Resources v. Glickman*, 82 F.3d 825 (9th Cir. 1996), where the disagreements cited by the parties seeking intervention apparently related to other issues in prior lawsuits.

733 (N.D. Il. 2003) ("[C]ourts have permitted post-enactment evidence in both senses of the term, both to buttress the original determination and to demonstrate that there remains pervasive discrimination in the industry which the remedy is narrowly tailored to address."). In *Coral Construction*, the Ninth Circuit found that consideration of post-enactment evidence, together with evidence relied upon by the government agency pre-enactment, was necessary to construct an accurate record of the existing discrimination supporting the need for a challenged Minority-and-Women-Owned Business Enterprise set-aside program for public contract awards. *Coral Construction*, 941 F.2d at 920. As in *Coral Construction,* the DBEs can provide a crucial perspective and additional evidence on the continuing existence of discrimination necessitating a race-conscious DBE program. They are better-positioned, and more highly motivated, to do so than Caltrans.

In addition, courts have routinely recognized that, in enacting contracting programs to rectify discrimination, government entities are by nature caught between "seemingly conflicting demands." *Coral Construction*, 941 F.2d at 920; *see also Wygant v. Jackson Board of Educ.*, 476 U.S. 267, 291 (1986) (O'Connor, J., concurring) (noting how public entities enacting remedial race-conscious measures "are trapped between … competing hazards of liability"). When entities such as Caltrans are compelled by statute or regulation to compile evidence of discrimination in their midst, they may be reluctant to fully explore such evidence for fear that it will point the finger of blame back at them. *See Grutter v. Bollinger*, 188 F.3d 394, 401 (6th Cir. 1999) (granting intervention) ("We find persuasive [intervenors'] argument that the University is unlikely to present evidence of past discrimination by the University itself or of the disparate impact of some current admissions criteria, and that these may be important and relevant factors in determining the legality of a race-conscious admissions policy."). The DBEs here will have no such compunction about demonstrating how and why Caltrans has perpetuated an environment in which the DBEs receive a vanishingly small percentage of federally-funded contracts in the State. Even at this very preliminary stage of the proceedings, Caltrans has *already* indicated it is unwilling to fully make these arguments, a point that Plaintiff completely ignores. *See* Mot. at 12 (citing Caltrans' Ans. ¶ 39 ("admit[ting] that no Caltrans

officials have engaged in discrimination")).

Undoubtedly, it is precisely because of this inherent tension that exists for government entities in enacting minority contracting programs that intervention by minority-owned businesses is so frequently sought and granted. *See*, supra, note 1 (citing cases).

Plaintiff mistakenly relies on *California ex rel. Lockyer v. United States*, 450 F.3d 436, 443-44 (9th Cir. 2006), for support. The case supports the DBEs' position. Even where the government party was the Department of Justice, the Ninth Circuit held that the district court had abused its discretion in refusing intervention as a matter of right to the intended beneficiaries of the federal statute at issue in the case, because the government defendant *might not* make all of intervenor organizations' arguments. *Lockyer,* 450 F.3d at 443-445 (reversing and granting intervention). Although both California and the United States opposed intervention, the Ninth Circuit held that the proposed intervenors were not adequately represented by the defendants. *Id.* at 445 (also noting that "[b]y making the [more] strident argument…the proposed intervenors bring a point of view to the litigation not presented by either the plaintiffs or the defendants."). In reversing the district court's denial, the Ninth Circuit underscored that the proposed intervenor nonprofits' interests were "more narrow [and] parochial" than defendant U.S. government's interests, making them sufficiently divergent to render the defendant's representation materially inadequate. *Id*. The DBEs have offered ample evidence that neither party would adequately represent proposed intervenors' interest, and that Caltrans will not make all of its arguments. Moreover, intervention would aid the court in resolving the legal and factual issues raised by Plaintiff's lawsuit. Therefore, the DBEs are entitled to intervention as a matter of right under Federal Rule of Civil Procedure 24(a)(2).

## III. CONCLUSION

For the reasons identified above and in the Motion, the DBEs request that the Court grant their motion to intervene as of right under Federal Rule of Civil Procedure 24(a)(2). Alternatively, the DBEs request permissive intervention under Federal Rule of Civil Procedure 24(b).

DATED: October 28, 2009

BINGHAM McCUTCHEN LLP

By: */s/ Michael I. Begert*

BINGHAM McCUTCHEN LLP
MICHAEL I. BEGERT (SBN 141969)
michael.begert@bingham.com
SUJAL J. SHAH (SBN 215230)
sujal.shah@bingham.com
ERIN S. CONROY (SBN 241042)
erin.conroy@bingham.com
CARLOS P. MIÑO (SBN 247022)
carlos.mino@bingham.com
Three Embarcadero Center
San Francisco, CA 94111-4067, U.S.A.
Telephone: 415.393.2000
Facsimile: 415.393.2286

LAWYERS' COMMITTEE FOR CIVIL RIGHTS
OREN SELLSTROM (SBN 161074)
KENDRA FOX-DAVIS (SBN 248757)
131 Steuart Street, Suite 400
San Francisco, CA 94105
Telephone: (415) 543-9697
Facsimile: (415) 543-0296
Email: osellstrom@lccr.com

EQUAL JUSTICE SOCIETY
EVA JEFFERSON PATERSON (SBN 67081)
260 California Street, Suite 700
San Francisco, CA 94111
Telephone: (415) 288-8700
Facsimile: (415) 288-8787
Email: epaterson@equaljusticesociety.org

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA
ALAN L. SCHLOSSER (SBN 49957)
JORY C. STEELE (SBN 206944)
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437
Email: aschlosser@aclunc.org

Attorneys for Defendant-Intervenors Coalition for Economic Equity and National Association for the Advancement of Colored People, San Diego Chapter